[Cite as *Bauer v. Brunswick*, 2011-Ohio-4877.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| JEROME BAUER | C.A. No. 11CA0003-M |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF BRUNSWICK | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellee | CASE No. 09CIV1767 |

DECISION AND JOURNAL ENTRY

Dated: September 26, 2011

WHITMORE, Judge.

{¶1} Plaintiff-Appellant, Jerome Bauer, appeals the order of the Medina County Court of Common Pleas that granted summary judgment to Defendant-Appellee, the City of Brunswick ("the City"). This Court affirms.

I.

{¶2} Bauer built a house in Brunswick in 1973. The property in his neighborhood is serviced by a sanitary sewer, but since 1975 has had a surface water retention system consisting of swales, culverts, and ditches. Bauer's home experienced flooding after heavy rains in 1976, 1987, and 1997. He noticed cracks in the south wall of his basement in the early 1990s. After each of these incidents, he performed maintenance on the pipe that connects his downspouts and sump pump to the ditch. In December 2004, his basement flooded again. After that incident, he hired a contractor to perform maintenance on the same area and also contacted the City with his

belief that backup from the surface water retention system was causing the flooding. His property did not flood again.

{¶3} Bauer sued the City for negligence, arguing that the City had a duty to upgrade the existing storm sewer system when it proved to be inadequate to service his neighborhood. He also alleged that the City was liable for a continuing trespass and petitioned the court of common pleas for a writ of mandamus to compel the City to appropriate his property. The trial court granted summary judgment to the City, and Bauer appealed. His three assignments of error are rearranged for ease of disposition.

## II.

### Assignment of Error Number One

"THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO THE CITY OF BRUNSWICK AS THERE WAS A GENUINE ISSUE OF MATERIAL FACT WHETHER THE CITY OF BRUNSWICK ENGAGED IN A TAKING AND NEGLIGENCE AND THE CITY OF BRUNSWICK WAS NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW."

### Assignment of Error Number Three

"THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO THE CITY OF BRUNSWICK AS THERE WERE GENUINE ISSUES OF MATERIAL FACT WHETHER THERE WAS AN APPLICABLE EXCEPTION TO THE CITY'S SOVEREIGN IMMUNITY UNDER R.C. §2744.02(B)."

{¶4} Bauer's first and third assignments of error argue that the trial court improperly granted summary judgment to the City based on the conclusion that the City's actions with respect to the storm sewer were in performance of a governmental function. Bauer believes that a proprietary function is involved instead and argues that summary judgment was not proper because there are genuine issues of material fact related to "if the City has violated its *proprietary* duties." (Emphasis in original.) We disagree.

{¶5} As a general rule, political subdivisions are "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). This immunity, however, is subject to the exceptions described in R.C. 2744.02(B). One of these exceptions provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). If the basis for a claim is the performance of a governmental function, a political subdivision is immune from suit for negligence unless one of the other four exceptions described in R.C. 2744.02(B) is present. On the other hand, a political subdivision does not have immunity for negligent acts committed in the performance of a proprietary function absent the conditions described in R.C. 2744.03. The classification of a function as governmental or proprietary is, therefore, significant.

{¶6} Under R.C. 2744.01(C)(2)(l), "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a *** sewer system" is a governmental function. In contrast, "[t]he maintenance, destruction, operation, and upkeep of a sewer system" is a proprietary function. R.C. 2744.01(G)(2)(d). This Court has concluded that the decision to upgrade an existing sewer system involves the exercise of a governmental function. *Duvall v. Akron* (Nov. 6, 1991), 9th Dist. No. 15110, at *2-3. In that case, the plaintiff alleged that a sewer system installed fifty-one years earlier had become "inadequate to meet the current residential demands and that pumps or a general update of the system [were] indicated." Id., at *3. This Court connected the decision to upgrade a sewer system with the initial provision and construction thereof, noting that "Akron was immune from liability when it exercised its

judgment fifty-one years ago and planned sewer construction *** [and] remains immune from liability when it exercises its judgment in determining *** how to allocate its limited financial resources, with regard to updating the sewer system." Id. See, also, *Zimmerman v. County of Summit, Ohio* (Jan. 15, 1997), 9th Dist. No. 17610, at *3 (concluding that when a sewer system as designed is presently insufficient, requiring "extensive redesigning and reconstructing of the system to meet current demands," a political subdivision's decisions in the matter do not involve proprietary functions.)

{¶7} More recently, other districts have reached the same conclusion. See *Ivory v. Austintown Twp.*, 7th Dist. No. 10 MA 106, 2011-Ohio-3171; *Essman v. Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837. In *Essman*, for example, the Fourth District interpreted the plain language of R.C. 2744.01 regarding the distinction between governmental and proprietary functions with respect to sewer systems as follows:

> "An 'upgrade' is but another word for improvement. Thus, to 'upgrade' is to 'improve.' To improve means 'to enhance in value or quality: make better.' Because an upgrade to a sewer system would mean enhancing the system's value, upgrade is not synonymous with upkeep. 'Upkeep' means 'the act of maintaining in good condition.' Upgrading a sewer system would require more than retaining the system in good condition. Upgrading involves more than simple maintenance. Rather, upgrading involves a positive act of improvement. The Ohio General Assembly did not specify the upgrade of a sewer system as a proprietary function. *** [W]e believe that a political subdivision's decision regarding an upgrade of its sewer system is a governmental function. A decision to upgrade requires a political subdivision to weigh various considerations, including the availability of fiscal resources, the use and acquisition of additional equipment, and the overall design of the system." (Internal citations omitted.) Id. at ¶44.

{¶8} The First and Eleventh District Courts of Appeals, however, have reached a different conclusion. See *Moore v. Streetsboro*, 11th Dist. No. 2008-P-0017, 2009-Ohio-6511, at ¶59; *H. Hafner & Sons, Inc. v. Cincinnati Metro. Sewer Dist.* (1997), 118 Ohio App.3d 792, 797 ("[W]e hold that the failure to upgrade sewers that are inadequate to service upstream property

owners despite sufficient notice of the inadequacy can best be described as a failure to maintain or upkeep the sewer. *** If proven, this failure would constitute the breach of a proprietary duty and would expose the county to liability under R.C. 2744.02(B)(2).")

{¶9} This question is now before the Ohio Supreme Court on the certification of a conflict between *H. Hafner & Sons* and *Essman*. See *Essman v. Portsmouth*, 127 Ohio St.3d 1544, 2011-Ohio-647. This Court sees no reason to depart from our precedent, however, and so we reiterate the conclusion that we reached in *Duvall* and *Zimmerman*. When a sewer system's design and construction later proves inadequate, the decision whether to upgrade or redesign the system involves "[t]he provision or nonprovision, planning or design, construction, or reconstruction" of the system and, therefore, the exercise of a governmental function. R.C. 2744.01(C)(2)(l). As such, the exception to immunity for negligence in connection with a proprietary function is inapplicable. See R.C. 2744.02(B)(2). Unless another exception applies under R.C. 2744.02(B), therefore, the general grant of sovereign immunity under R.C. 2744.02(A) remains in place.

{¶10} In this case, Bauer argues that the storm sewer system in his neighborhood proved to be inadequate, but the City did not upgrade the system until 2009. The City did not dispute that Bauer's home experienced flooding on several occasions over the years. To the extent that Bauer's claims attribute the flooding to the City's failure to upgrade the sewer system in his neighborhood, however, the City maintained that it was entitled to summary judgment because the "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a *** sewer system" is a governmental function. R.C. 2744.01(C)(2)(l). We agree that the determination whether to upgrade the existing storm sewer system involved the exercise of a governmental function and, because none of the other exceptions set forth in R.C. 2744.02(B)

apply in this case, the City is immune from liability. Summary judgment was properly granted to the City on this basis, and Bauer's first and third assignments of error are overruled.

Assignment of Error Number Two

"THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO THE CITY OF BRUNSWICK AS THERE WERE GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER BAUER DISCOVERED THE CITY OF BRUNSWICK'S FAULT IN MARCH 2005."

{¶11} Bauer's second assignment of error argues that the trial court incorrectly granted summary judgment to the City on his petition for a writ of mandamus based on the conclusion that his claim was made outside the relevant statute of limitations. We disagree.

{¶12} In 2002, the Ohio Supreme Court concluded that "the statute of limitations applicable to a mandamus action to compel the state to begin appropriation proceedings is the six-year limitation set out in R.C. 2305.07." *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, at ¶31. Two years later, however, the legislature amended R.C. 2305.09(E) to provide a four-year statute of limitations "[f]or relief on the grounds of a physical or regulatory taking of real property." R.C. 2305.09(E). See, also, *Painesville Mini Storage, Inc. v. Painesville*, 124 Ohio St.3d 504, 2010-Ohio-920, at ¶2; *State ex rel. Stamper v. Richmond Hts.*, 8th Dist. No. 94721, 2010-Ohio-3884, at ¶25. Regardless of whether the six-year statute of limitations set forth in *R.T.G.* or the four-year statute of limitations in R.C. 2305.09(E) applies in this case, however, the trial court did not err by concluding that Bauer's mandamus petition is time-barred.

{¶13} Bauer maintains that his claim was timely filed because, as set forth in his affidavit submitted in opposition to the City's motion for summary judgment, he "wasn't convinced it was the fault of the City of Brunswick until *** March of 2005." Assuming for purposes of its argument that the City could be at fault for the flooding, the City argues that

Bauer's affidavit contradicted his deposition testimony in this respect and should be disregarded. When a moving party opposes summary judgment with reference to an affidavit that appears to contradict prior deposition testimony, the first step in our analysis is determining "whether the statements in the affidavit contradict or merely supplement the affiant's earlier testimony." *Craddock v. Flood Co.*, 9th Dist. No. 23882, 2008-Ohio-112, at ¶15. If the affidavit does not actually contradict the prior testimony, the affiant's statements may demonstrate issues of fact, but those issues must be both genuine and material. See id. at ¶18.

{¶14} According to Bauer's deposition testimony, he "was suspicious about the water backing up *** [from] [t]he ditch in front of [his] house" as early as 1987. In "the early 90s" he provided a city councilman with video of flooding in the neighborhood because he believed there was "[e]rosion underground *** [and] water backing up from the ditch causing that clay tile seal to leak." His affidavit acknowledges the prior flooding, but states that Bauer was not "convinced it was the fault of the City of Brunswick until *** March of 2005." Taking these statements at face value, it is certainly possible that Bauer's earlier suspicions were confirmed in 2005, and the affidavit need not be rejected as contradictory. Nonetheless, his affidavit does not create a genuine or material issue of fact in this respect. "A cause of action for injury to real property and relief on the grounds of a physical or regulatory taking accrues, and the *** statute of limitations commences to run, when the injury or taking is first discovered, or through the exercise of reasonable diligence, should have been discovered." *Stamper* at ¶25. The question is not a matter of when the plaintiff became convinced of the alleged taking, and in this case, it is clear that Bauer at least had strong suspicions about the ditch as early as 1987. Because he did not file his complaint until March 2007, the trial court did not err by granting summary judgment to the City on that basis. Bauer's second assignment of error is overruled.

III.

**{¶15}** Bauer's assignments of error are overruled.  The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(E).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR

APPEARANCES:

LELAND D. COLE, Attorney at Law, for Appellant.

ROBERT P. LYNCH, JR., Attorney at Law, for Appellee.