[Cite as *Johnson v. Albers*, 2012-Ohio-1367.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| PAUL JOHNSON, Administrator of the Estate of William Johnson, deceased, | : | APPEAL NO. C-110628 TRIAL NO. A-1004795 |
| | : | |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | : | *O P I N I O N.* |
| DANIEL G. ALBERS, | : | |
| Defendant-Appellant. | : | |
| | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  March 30, 2012


*Shea, Coffey & Hartmann*, *Joseph W. Shea III* and *Shirley A. Coffey*, for Plaintiff-Appellee,

*John K. Benintendi*, for Defendant-Appellant.


Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Daniel G. Albers appeals the judgment of the Hamilton County Court of Common Pleas determining that William Johnson's death following a collision with Albers's car was attributable to Albers's negligence, and requiring Albers to pay $250,000 to plaintiff-appellee Paul Johnson ("Johnson"), as the administrator of the estate of his deceased brother. The parties had stipulated the damage amount. Because we determine that the trial court properly applied R.C. 4511.46, and that the trial court's decision was not against the manifest weight of the evidence, we affirm.

### *Factual Background*

{¶2} On December 4, 2008, Albers drove his sports utility vehicle ("SUV") on Madison Road in east Cincinnati, Ohio, while on his way to work. The sun had not yet risen, and the roadway was damp from a recent rain. That same morning, 65-year-old William headed from his home at St. Paul's Village Retirement Home on the south side of Madison to the bus stop at the intersection of Madison and Anderson Place on the north side of Madison, which was his morning routine. Madison runs east and west with two lanes of traffic in each direction and has left-hand turn lanes at the intersection of Anderson Place. The posted speed limit is 35 m.p.h. A marked crosswalk on the eastern side of Anderson crosses Madison Road and is accompanied by an overhead crosswalk sign, a street-level crosswalk sign, and a flashing yellow caution light.

{¶3} As Albers traveled east on Madison, Albers's SUV hit William as William crossed Madison from the south. William did not survive his injuries.

{¶4} The police officers who responded to the 911 call made by Albers found William's laminated bus pass in the westbound turn lane, inside the marked crosswalk. The officers also found a scuff mark created by the heel of William's shoe south of the bus pass in the left-hand eastbound through lane in which Albers's SUV had been traveling. The scuff mark was approximately three feet east of the crosswalk and almost in the center of Albers's lane.

{¶5} Johnson filed this wrongful-death action against Albers. The parties stipulated to damages in the amount of $250,000, and the case proceeded to a bench trial on the issue of liability only. Albers testified that he had been traveling approximately 35 m.p.h. approaching the Anderson intersection. He testified that he had not seen William until just after he had hit him, and then he had begun breaking.

{¶6} Kathleen and John Taylor testified that they had been riding together in their truck on the way to work the morning of the collision. Kathleen had been driving, and she testified that as she had headed west on Madison in the left-hand through lane, she had swerved into the westbound turn lane at the intersection of Anderson because a school bus in the lane to the right of her had made a wide right turn onto Anderson. As she had swerved, Kathleen testified that she had exclaimed to her husband that a man wearing dark-colored clothing had been standing in the roadway, and she had seen him next to her driver's side window. John testified that he had turned around to see if someone had been standing in the road, and he had not seen anyone.

{¶7} David Nelson testified that he had been traveling eastbound in the right-hand through lane three or four car-lengths behind Albers. As he had headed

up the hill toward the crosswalk, he had not seen anyone in the roadway. He also testified that the vehicles, including Albers's, had not been speeding.

{¶8}  Johnson's accident reconstruction expert, Steve Ashton, testified that if William's bus pass had been found in the crosswalk, William must have been there. The prevailing winds at the time would have blown the bus pass further into the marked crosswalk and not out of it, Ashton testified. Johnson testified that William, a former marine, had been a regimented person and had routinely used the crosswalk.

{¶9}  Albers's expert Leon Kazarian testified that, based on William's injuries, William's left leg had been stationary and not flailing when he had been hit, and William had been looking to his right, away from Albers's vehicle. Kazarian also testified that the scuff mark had been the point of impact with Albers's SUV and that the SUV had been traveling in a straight line.

{¶10}  Albers's expert Frederick Lickert testified that, based upon the location of the scuff mark, the final resting position of William's body, and Albers's testimony that he had not begun breaking until he had hit William, Albers's SUV had been traveling 25 m.p.h.—10 m.p.h. under the posted speed limit. James Sobek also testified as an expert for Albers. Sobek testified that because of the headlights, reflections off the roadway, and William's dark-colored clothing, William would not have been visible to Albers until 85 feet prior to the point of impact.

### The Trial Court's Findings

{¶11} The trial court found that Albers had been more than 50 percent negligent, and therefore ordered Albers to pay Johnson the stipulated damage amount of $250,000. In its findings of fact and conclusions of law, the trial court

4

found that William had been in the crosswalk based upon testimony from Johnson's expert. Although the scuff mark had been found by police outside the marked crosswalk, the trial court found no evidence that William had entered Albers's lane of travel suddenly, or that William had been standing outside the crosswalk for any length of time. The trial court found that the placement of the scuff mark only meant that the impact had occurred at that point and that William had likely stepped outside the marked crosswalk in attempt to flee the impending crash.

{¶12} The trial court also found that Albers had probably seen William and had begun to brake before impact. The trial court discounted Albers's testimony that he had not seen William until impact because the damage to Albers's SUV had been higher up on the vehicle, which suggested that the vehicle had been depressed at the time of impact from braking. The trial court also found that Albers had begun breaking 85 feet prior to the point of impact, in accordance with Sobek's testimony that Johnson would have been discernable 85 feet in front of the impact point.

{¶13} The trial court also found that Albers had been traveling at an unreasonably unsafe speed. The trial court reasoned that Albers, by his own testimony and prior admissions, had stated that he had been going from 35 to 40 m.p.h. The trial court discounted Nelson's lay testimony that Albers had not been speeding and also discounted Lickert's opinion testimony that Albers had been going about 25 m.p.h. because Lickert's opinion rested on the assumption that Albers had not begun to brake until the point of impact. The trial court also reasoned that, if the entire discernment-reaction-braking process occurred over 173 feet, then Albers's speed was most likely consistent with his own admission. The trial court found that even though the posted speed limit was 35 m.p.h., a speed of 25 m.p.h. would have

been reasonable because of the glare of car lights, the crosswalk signs, and because the streets had been damp from a recent rain.

{¶14} Based upon its findings, the trial court determined that Albers's failure to exercise due care at the crosswalk and rate of speed proximately caused William's death. The trial court found that William's dark-colored clothing had contributed to the crash and Albers's ability to perceive him, but that Albers had been primarily at fault.

{¶15} Albers has appealed, arguing in two assignments of error that the trial court incorrectly applied R.C. 4511.46 and that the trial court's decision was against the manifest weight of the evidence. We will address each argument in turn.

### Right-of-Way for Pedestrian in Crosswalk

{¶16} Albers argues in his first assignment of error that because William was not on the half of the roadway upon which Albers was traveling prior to impact, and William had left a place of safety, Albers had not violated R.C. 4511.46(A). R.C. 4511.46(A) states that

> [w]hen traffic control signals are not in place, not in operation, or are not clearly assigning the right-of-way, the driver of a vehicle * * * shall yield the right of way, slowing down or stopping if need be to so yield * * * to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.

6

R.C. 4511.46(B) states that "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle * * * which is so close as to constitute an immediate hazard."

{¶17} Both parties agree that an appellate court should not disturb a trial court's findings of fact if the record contains competent, credible evidence to support those findings. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. Albers argues that his assignment of error raises mixed questions of law and fact, and that as to legal questions, the standard of review is de novo. *Bowling v. Stafford & Stafford Co., L.P.A.*, 1st Dist. No. C-090565, 2010-Ohio-2769, ¶ 8. Johnson argues that the application of R.C. 4511.46 turns on whether Williams was in the crosswalk, which is purely a fact question. Even under a de novo standard of review, however, Albers's argument under R.C. 4511.46 is not well-taken.

{¶18} Albers contends that because the trial court found that William had been at the location of the bus pass prior to impact, and that the bus pass had been located in the westbound turn lane, William had not been on the half of the roadway upon which Albers had been traveling. Albers also argues that William had been in a place of safety in the westbound turn lane before he had been hit by Albers. Therefore, Albers argues, he did not violate R.C. 4511.46(A).

{¶19} Considering the trial court's findings, we cannot agree with Albers's argued application of R.C. 4511.46. The trial court found that William had been inside the crosswalk where he had dropped his bus pass before he had headed back south and had been hit in Albers's lane of travel, three feet outside the marked crosswalk. Once William had established his right-of-way in the crosswalk and had

7

been on Albers's half of the roadway, or closely approaching from the westbound lanes as the evidence supports, Albers had a duty under R.C. 4511.46(A) to yield to William.

{¶20} Nor can we determine that William had been in a place of safety in the westbound turn lane prior to entering Albers's lane of travel. Kathleen Taylor testified that she had swung into the westbound turn lane and had seen a man in dark-colored clothing close to her driver's side window. Taylor's testimony along with the other evidence in the record shows that William had successfully crossed the eastbound traffic on Madison, but had difficulty negotiating the westbound traffic. William had been trapped in the middle of the roadway when he had entered Albers's lane of travel. Therefore, R.C. 4511.46(B) is not implicated.

{¶21} We determine that the trial court properly applied R.C. 4511.46, and we overrule Albers's first assignment of error.

### Manifest Weight

{¶22} In his second assignment of error, Albers argues that the judgment of the trial court is against the manifest weight of the evidence. In order to succeed in a wrongful-death action, the plaintiff must show that the decedent's death was caused by a wrongful act, neglect, or default on the part of the defendant. R.C. 2125.01. A wrongful-death action predicated on negligence requires the plaintiff to show a duty owed to the decedent, breach of that duty, and proximate causation between the breach and the death. *Thompson v. Wing*, 70 Ohio St.3d 176, 184, 1994-Ohio-358, 637 N.E.2d 917. So long as the trial court's judgment is supported by some competent, credible evidence, it cannot be overturned. *C.E. Morris Co.*, 54 Ohio St.2d at syllabus, 376 N.E.2d 578.

{¶23}  Albers contends that the trial court's finding that William was in the marked crosswalk was against the manifest weight of the evidence.  Albers argues that the only testimony on this issue came from Johnson who testified that his brother had routinely used crosswalks.  Albers notes that the trial court found that the circumstantial evidence as to William's pre-collision location went "both ways," meaning that evidence existed to show that William had been in the crosswalk and also that he had not been in the crosswalk.  Thus, Albers argues, Johnson did not meet his burden of proof.

{¶24}  Albers also relies on *Meyer v. Rapacz*, 8th Dist. No. 95571, 2011-Ohio-2537, for his manifest-weight argument.  In *Meyer*, a driver struck and killed a pedestrian, and the driver testified that he had not seen the pedestrian until he had hit him.  *Id.* at ¶ 5.  The court determined that the driver had no duty to look for the pedestrian violating his right of way because no evidence existed to suggest that the driver should have foreseen a dangerous situation, which would have required the exercise of greater care.  *Id.* at ¶ 23.

{¶25}  Albers analogizes his situation to the facts in *Meyer* because in both cases the driver had not seen the decedent immediately before the accident.  *Meyer* is distinguishable.  In *Meyer*, the undisputed evidence showed that the pedestrian was not in a marked crosswalk.  *Id.*  In the instant case, some competent, credible evidence, albeit circumstantial, exists to show that William had been in the marked crosswalk.  Not only did Johnson testify regarding his brother's routine practice of using crosswalks, but Johnson's expert, Steve Ashton, testified that William had been in the crosswalk prior to impact based upon the location of the bus pass.  Moreover, although the trial court noted that circumstantial evidence as to William's pre-

9

collision location went "both ways," the trial court ultimately concluded that William had been in the crosswalk.

{¶26} Finally, Albers contends that the trial court erred in finding that his speed was unreasonable and that no evidence existed to show that his speed proximately caused Albers's death. The trial court determined that Albers's SUV had been traveling between 35 and 40 m.p.h., based in part on the perception-to-rest distance measured from where Albers would have first been able to discern William to the point that William's body came to rest after the collision. Albers argues that the trial court's perception-to-rest calculation is flawed because Albers had begun breaking at the point of impact or a tenth of a second beyond it, and using a stopping distance of 60 feet, Albers would have been traveling between 18 and 19 m.p.h. Alternatively, Albers argues that the trial court incorrectly calculated the perception-to-rest distance as 173 feet. Albers contends that William's body did not come to rest 88 feet from the point of impact as stated by the trial court, but that his body actually came to rest 60 feet from the point of impact. Therefore, Albers argues, the total distance of perception to rest was 145 feet, and applying the same coefficient of friction that the trial court applied, Albers would not have been speeding, but instead traveling between 33 and 34 m.p.h.

{¶27} We determine that Albers's arguments regarding his speed are largely irrelevant. Because competent, credible evidence existed to support the trial court's determination that William had been in the crosswalk prior to impact and had been on Albers's half of the roadway or closely approaching, under R.C. 4511.46(A) Albers owed a duty to yield to William no matter whether Albers had been traveling 10 m.p.h. or 40 m.p.h. Therefore, we overrule Albers's second assignment of error.

10

**{¶28}** In conclusion, once William established his right-of-way in the crosswalk and was on Albers's half of the roadway or closely approaching, Albers had a duty pursuant to R.C. 4511.46(A) to yield to William. William did not leave a place of safety under R.C. 4511.46(B) by moving from the westbound turn lane in the crosswalk into Albers's lane, especially where the evidence suggests that William could not safely negotiate westbound traffic. Competent, credible evidence existed to support the trial court's determination that William's death was attributable to Albers's negligence. Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.