[Cite as *Parker v. Newmark Homes, Inc.*, 2013-Ohio-4402.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

HUNTER D. PARKER

      Plaintiff-Appellant

v.

NEWMARK HOMES, INC.

      Defendant-Appellee


Appellate Case No.    25686

Trial Court Case No.   2012-CVF-00358

(Civil Appeal from Municipal Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 4th day of October, 2013.

. . . . . . . . . . .

CHAD E. BURTON, Atty. Reg. No. 0078014, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440
      Attorney for Plaintiff-Appellant

PAUL M. COURTNEY, Atty. Reg. No. 0020085, 3333 Stonequarry Road, Dayton, Ohio 45414
      Attorney for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Plaintiff-Appellant, Hunter Parker, appeals from a judgment rendered in favor of Defendant-Appellee, Newmark Homes, Inc., following a bench trial. Parker contends that the trial court erred in ruling that he failed to file his action within the applicable statute of limitations.

**{¶ 2}** We conclude that the trial court did not err in holding that Parker failed to comply with the applicable statute of limitations. The record contains competent, credible evidence indicating that Parker knew of the defect giving rise to his cause of action more than six years before the action was filed. The action, therefore, was untimely under either R.C. 2305.09(D) or R.C. 2305.07. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

**{¶ 3}** In February 2011, Parker filed a complaint against Newmark Homes, Inc. (Newmark), alleging that Newmark had failed to properly construct a retaining wall located on Parker's property. The action was dismissed without prejudice and was then refiled in February 2012. Parker's complaint contained claims for breach of contract and failure to perform construction and installation of the retaining wall in a workmanlike fashion.

**{¶ 4}** Ultimately, a bench trial was held before a magistrate, who heard testimony from Parker and from Greg Barney, the President and owner of Newmark. The magistrate also admitted the deposition testimony of a witness, Russ Harris, who had been subpoenaed, but had failed to appear for trial.

**{¶ 5}** The testimony indicated that Newmark had constructed a home for Parker and his wife in 2002. The house was located at 770 Deer Creek Dr., Vandalia, Ohio, and Parker was

satisfied with the home's construction. However, the lot was not level, and Newmark agreed to construct a retaining wall at the back of the property. The wall was to be 4'8" high and 90' long, and the wall was to be constructed with Keystone Intermediate blocks. The foundation of the wall was to be compacted gravel, with a backfill of limestone "57s" up to one foot in depth behind the wall.

{¶ 6} After installing the retaining wall, Newmark invoiced Parker $6,788 on July 1, 2002, and Parker paid Newmark that amount. Subsequently, in 2004, Parker concluded that the wall was beginning to bulge and look a bit unstable on the west half, so he asked Greg Barney to come out and look at the wall. Barney agreed to repair the wall, and did not charge Parker for the repair. Barney brought out his own equipment – a track hoe and a Bobcat – and also hired Harris Seed & Sod to provide laborers. Harris had previously installed the sod when Parker's home was constructed.

{¶ 7} In 2004, about 50 feet of the wall was torn down. There was a dispute in testimony regarding precisely how much work was done. Russ Harris, the owner of Harris Seed & Sod, testified via deposition that when part of the original wall was removed in 2004, the base of the wall did not contain as much base as he would have used. Harris also stated that the drainage tile was not draining properly, that less 57s were used than he would normally use, and that there was mud mixed in with the 57s, which could affect the ability of water to percolate. According to Harris, they tore the wall down to the base, took out all the base and block, put a new base in, put drainage tile behind the wall for drainage, added more 57s and gravel for extra drainage, and built the wall back up.

{¶ 8} Barney testified that they unstacked the blocks in the wall, but did not get into

the base. They re-stacked the base, reinserted the drain tile and backfill, and restored the yard. Barney paid Harris $845 for labor, and had other expense that was not significant, including about $100 to $200 for a load of gravel and a section of pipe.

{¶ 9}    Several years later, in 2010, Parker asked Harris for a quote to repair the eastern part of the wall, which was leaning away from the yard, instead of toward the yard. Parker did not call Newmark or Barney about the problem. Both Parker and Harris testified that Parker asked Harris to contact Barney, and that Harris did so before beginning work. According to Harris, Barney stated that he was not responsible for repairing the wall because it was outside the warranty time on the house. In contrast, Barney testified that no one contacted him before the repairs were made.

{¶ 10}   In early August 2010, Harris invoiced Parker in the amount of $7,800 for repairing the wall. This price included $1,500 for tearing down the old wall, $4,500 for rebuilding the wall, $800 for Bobcat and track hoe charges, and $100 for installing new tile behind the retaining wall and drilling into a concrete pipe. $900 of this amount was for new caps, which were not part of the repair. Parker also incurred about $597 in charges for replacing the landscaping.

{¶ 11}   The work for this repair was similar to what had been done in 2004. Harris was able to reuse the original blocks that had been installed in 2002, and did not have to purchase more block.

{¶ 12}   On August 5, 2010, Parker left a voice mail with Barney, requesting payment for repairs that had been made to the wall. On August 9, 2010, Parker sent Barney a letter, requesting $6,900 for the cost of having the eastern part of the wall rebuilt. In the letter, Parker

stated that:

When the wall was repaired/re-built in 2005, also by Harris Sod & Seed, several deficiencies were discovered including: insufficient base (less than 4 inches); improper drainage (no drain or no way for the drain to empty); no Geogrid (recommended/required on all walls with a height above 4 feet) and dirty or insufficient gravel backfill. Only one half of the wall was repaired/rebuilt at that time.

The east side of the wall (east of the culvert/drain pipe) was quickly becoming unstable. It was bulging out approximately 2 feet and the top layer was severely tilted. It was not a question of if it would fail only when it would fail. The top course of block was above or slightly beyond the bottom course of block.

I took pictures of the work as it was being completed and also of the wall prior to the start of the tear-down and re-building of the wall. As you might guess the following was discovered during this process: there was no Geogrid behind the wall; the gravel back fill was a mixture of mud and gravel (not allowing for proper drainage) and there was no drain tile in this portion of the wall. These were the primary reasons for the failing of the wall and fairly consistent with the issues uncovered during the tear down and rebuilding of the other half of the wall. *I had been living with the wall for several years hoping it would not continue to deteriorate.* Part of the reason for the bed was to cover up the bend in the wall. *There was no longer any way I could try to disguise the structural issues with the wall so I had to have the wall re-built.* (Emphasis

added.)   Plaintiff's Exhibit 7, pp. 1-2.[1]

**{¶ 13}**   In late August 2010, Barney responded to Parker's letter, denying that there were any deficiencies in the original construction of the wall.   Barney also noted Harris's agreement with that fact, per a conversation that Barney had with Harris on August 5, 2010.   In addition, Barney stated that the repair costs were excessive, and that he had not been notified of any issues regarding the wall prior to Parker's voice mail on August 5, 2010.

**{¶ 14}**   Parker subsequently filed a complaint against Newmark in Vandalia Municipal Court on February 4, 2011.   The action was then dismissed and was refiled in February 2012. After conducting a bench trial, the magistrate concluded that Parker knew of the defect in the wall, at the very latest, in August 2004, when Newmark repaired the wall at no cost.   Despite having knowledge of the defect, Parker waited until July or August of 2010 to notify Newmark, and then failed to file suit until February 2011, which was more than six years later. Accordingly, the magistrate concluded that Parker's claim was barred by the statute of limitations.

**{¶ 15}**   Parker filed objections to the magistrate's decision.   After considering the objections, the trial court agreed with the magistrate and found that the action was barred by the statute of limitations.   Parker appeals from the judgment rendered in favor of Newmark.

II.   Did the Trial Court Err in Ruling that Parker Failed

to Comply with the Statute of Limitations in R.C. 2305.09(D)?

---

[1]   Parker's letter refers to the first repair having occurred in 2005.   However, he acknowledged during his testimony that the repair was actually made in 2004.

{¶ 16}    Parker's First Assignment of Error states as follows:

The Trial Court Erred in Ruling That Appellant Failed to File This Action Within the Statute of Limitations For a Negligent Construction Claim on the Basis That He Knew About the Failed Retention Wall in 2004.

{¶ 17}    Under this assignment of error, Parker contends that the trial court erred in finding that the negligent construction claim accrued in 2004.  According to Parker, a cause of action does not accrue for purposes of the statute of limitations until a party suffers damages.  Parker, therefore, reasons that his action was timely because the problems with the wall between 2004 and 2010 were cosmetic only, and structural issues, or damage, did not arise until 2010.

{¶ 18}    The Supreme Court of Ohio has indicated that "[t]ort actions for injury or damage to real property are subject to the four-year statute of limitations set forth in R.C. 2305.09(D)."  (Citation omitted.)  *Harris v. Liston*, 86 Ohio St.3d 203, 714 N.E.2d 377 (1999), paragraph one of the syllabus.  In *Harris,* the court further stated that "[a] negligence action against a developer-vendor of real property for damage to the property accrues and the four-year statute of limitations of R.C. 2305.09(D) commences to run when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property."  *Id.* at paragraph two of the syllabus.

{¶ 19}    "Reasonable diligence" has been defined as " '[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity.' "  *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), quoting from *Black's Law Dictionary* 412 (5 Ed.1979).

{¶ 20}   The magistrate and trial court both concluded that Parker knew of the defect in the wall, at the latest, in August 2004, when the wall was repaired.   This involves an application of the law to factual findings, consistent with the concept that " 'statute-of-limitation issues generally involve mixed questions of law and fact.' "   (Citation omitted.)   *Five Star Fin. Corp. v. Merchant's Bank & Trust Co.*, 192 Ohio App.3d 544, 2011-Ohio-314, 949 N.E.2d 1016, ¶ 23 (1st Dist.)   Typically, "an appellate court should not disturb a trial court's findings of fact if the record contains competent, credible evidence to support those findings."   *Johnson v. Albers*, 1st Dist. Hamilton No. C-110628, 2012-Ohio-1367, ¶ 17, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.   In contrast, de novo review applies to legal conclusions.   *Id.*

{¶ 21}   After reviewing the record, we find competent, credible evidence to support the trial court's factual conclusions.   By his own admission, Parker   was aware of structural issues with the wall for "several years" before August 2010, and decided to repair the wall only when he could no longer disguise those issues.   The magistrate and trial court both relied on Parker's admission when they concluded that Parker knew of problems with the wall in 2004, but failed to bring an action until 2011, more than six years later.

{¶ 22}   Parker did testify at trial that the severeness of the structural issue only occurred in 2010.   However, this testimony is contradicted by the letter that Parker wrote to Barney in August 2010, when he stated that he had been struggling with structural issues for several years. The trial court was in the best position to resolve these credibility issues.   "The 'rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and

use these observations in weighing the credibility of the proffered testimony.' " *In re J.Y.*, 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33, quoting from *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Accordingly, the trial court did not err in concluding that Parker's action for negligent construction accrued in August 2004, and should have been filed within four years thereafter.

{¶ 23} Parker's First Assignment of Error is overruled.


III.   Did the Trial Court Err in Finding that Parker Failed

to Comply with the Statute of Limitations in R.C. 2305.07?

{¶ 24} Parker's Second Assignment of Error states that:

The Trial Court Erred in Ruling that Appellant Failed to File This Action Within the Statute of Limitations For a Breach of Contract Claim on the Basis That He Knew About the Failed Retention Wall in 2004.

{¶ 25} Under this assignment of error, Parker contends, as he did with the negligent construction claim, that his cause of action for breach of contract did not accrue until 2010, when the wall began to fail. For the reasons previously mentioned, we reject this contention.

{¶ 26} R.C. 2305.07 provides that:

Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued.

{¶ 27} R.C. 126.301 and R.C. 1302.98 do not apply to the case before us, because they

pertain, respectively, to actions for unclaimed funds and actions on contracts for sale. Thus, under R.C. 2305.07, the relevant time within which Parker's action for breach of contract must have been brought is six years after the cause accrued.

{¶ 28} In this regard, we note that the "discovery" rule has also been applied in cases involving R.C. 2305.07. Again, the discovery rule indicates that the statute of limitations begins to run " 'when the injury * * *is first discovered, or through the exercise of reasonable diligence, should have been discovered.' " *Bauer v. Brunswick*, 9th Dist. Medina No. 11CA0003-M, 2011-Ohio-4877, ¶ 14, quoting *State ex rel. Stamper v. Richmond Hts*., 8th Dist. Cuyahoga No. 94721, 2010-Ohio-3884, ¶ 25. In *Bauer*, the Ninth District Court of Appeals concluded that the plaintiff's claim was untimely, because he "at least had strong suspicions" about water backing up into a ditch ten years before he filed suit against the city that maintained the storm water sewer system. *Id*. at ¶ 2 and 14.

{¶ 29} In the case before us, Parker knew of the defect in the wall in 2004, but waited until 2011 to file suit. Since this was more than six years after Parker's discovery of the defect, the trial court did not err in finding that Parker's action was untimely under R.C. 2305.07.

{¶ 30} Parker contends that the outcome of the trial court's decision is unfair, because he was led to believe in 2004 that the problems with the wall had been resolved. However, Parker's own correspondence with Barney indicates that Parker knew of the structural problems, but failed to timely pursue his claim.

{¶ 31} Based on the preceding discussion, the Second Assignment of Error is overruled.

## IV.  Conclusion

**{¶ 32}**  All of Parker's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL and YARBROUGH, JJ., concur.

(Hon. Steve A. Yarbrough, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Chad E. Burton
Paul M. Courtney
Hon. Cynthia M. Heck