OPINION
{¶ 1} Plaintiffs-appellants, Larry and Peggy Sexton, appeal a decision of the Warren County Court of Common Pleas granting summary judgment in favor of defendants-appellees, the city of Mason, Rishon Enterprises, Inc., and McGill Smith Punshon, Inc.
 {¶ 2} The Sextons moved into their house on Cox Smith Road in Union Township, just outside the city limits of Mason, in 1988. The Sextons built a bridge over the small creek that runs through their property. At the time, defendant-appellee, Rishon Enterprises, Inc. ("Rishon"), owned the property adjacent to the Sextons'. Beginning in 1987 and ending in 1997, the property was developed into the Trailside Acres Subdivision. Defendant-appellee, McGill Smith Punshon, Inc. ("McGill"), an engineering company, designed the storm water system for the subdivision. McGill completed its services by 1994. Rishon's work on the subdivision ended in 1995.
 {¶ 3} Prior to the development of the subdivision, the Sextons did not experience any flooding on their property. However, after the construction of the subdivision began, the Sextons started to experience water problems; the problems worsened in 1992-1993, and became so severe that the Sextons wrote a letter to the city in 1995. In the letter, the Sextons stated that (1 ) the creek, which used to be dry most of the summer, was now always running and frequently flooded; (2) during heavy rains, the creek would rise and spill over the roadway and bridge, making the bridge impassable; (3) the water problems threatened to flood their basement; (4) the flooding was eroding their land and killing trees on the bank; and (5) the water problems were caused by the construction of the subdivision. The Sextons discussed their water problems with the city for several years, but the discussions broke down in 2003.
 {¶ 4} On July 17, 2001, during a particularly severe storm, the Sextons' basement was badly flooded. According to the Sextons, the water entered their basement with such force that the basement double doors were pushed completely out of their frames. Trapped in their house, the Sextons called 911. The fire department went to their house but was unable to reach them due to the flooding of their driveway.
 {¶ 5} On July 14, 2003, the Sextons filed a complaint against the city and its engineering department alleging claims relating to the construction, development, and the city's approval of the subdivision. On August 27, 2003, the Sextons filed an amended complaint adding Rishon and McGill as defendants. The city and Rishon each filed a motion to dismiss or, in the alternative, for summary judgment on the ground that the Sextons' action was barred by the four-year statute of limitations set forth in R.C. 2305.09. McGill moved for summary judgment on the same ground. Specifically, appellees argued that the Sextons' cause of action accrued in 1992 when they first became aware of the flooding problems. Since their complaint was not filed until 2003, well outside the four-year statute of limitations, it was time-barred.
 {¶ 6} The magistrate denied all three motions. The magistrate found that the Sextons' complaint stated a cause of action for continuing trespass. As a result, the action could "be brought at any time prior to the expiration of the prescriptive period of 21 years, but recovery may be had only for damages sustained within four years prior to the filing of the action." The trial court subsequently overruled objections to the magistrate's decision. Unabated, Rison and McGill each filed a motion for reconsideration while the city filed a second motion for summary judgment.
 {¶ 7} By decision filed on February 3, 2006, the trial court granted summary judgment in favor of all three appellees. With regard to Rishon and McGill, the trial court found that the Sextons suffered from a permanent trespass. As a result, their claims were barred by the four-year statute of limitations set forth in R.C. 2305.09. With regard to the city, the trial court found that (1 ) the Sextons did not allege in their complaint that the city undertook to manage the subdivision storm water system or did so negligently; (2) the city exercised a governmental function in its oversight and approval of the subdivision storm water system and was therefore entitled to sovereign immunity; and (3) the Sextons' constitutional taking claim was barred by the applicable six-year statute of limitations. This appeal follows.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED IN FINDING A PERMANENT TRESPASS TO WHICH A FOUR (4) YEAR STATUTE OF LIMITATIONS APPLIES."
 {¶ 10} The Sextons argue that because the water problem causing the flooding on their property was a continuing trespass, the trial court erred when it used the four-year statute of limitations to grant summary judgment to Rishon and McGill. In finding that the Sextons suffered from a permanent trespass, rather than a continuing one, the trial court relied on the First Appellate District's decision in Reith v. McGillSmith Punshon, Inc., 163 Ohio App.3d 709, 2005-Ohio-4852. The Sextons argue that under Ohio law, a claim for continuing trespass may be supported by proof of continuing damages, rather than continuing conduct. The Sextons contend that, as a result, the trial court improperly relied on Reith, and erred in relying solely on the fact that Rishon and McGill no longer controlled the storm water system by 1995, rather than the damages the Sextons continue to suffer.
 {¶ 11} Under R.C. 2305.09(A), there is a four-year statute of limitations for all trespass actions upon real property. In Harris v.Liston, 86 Ohio St.3d 203, 1999-Ohio-159, the Ohio Supreme Court held that "tort actions for injury or damage to real property are subject to the four-year statute of limitations set forth in R.C. 2305.09(D)." Id. at 207. The four-year statute of limitations begins to run when damage to the property "is first discovered, or through the exercise of reasonable diligence it should have been discovered." Id. It follows that the Sextons' claims against Rishon and McGill are governed by the four-year statute of limitations set forth in R.C. 2305.09.
 {¶ 12} The Sextons, however, argue that because the flooding caused by the construction of the subdivision constitutes a continuing trespass, the statute of limitations has not yet run.
 {¶ 13} In Valley Ry. Co. v. Franz (1885), 43 Ohio St. 623, the Ohio Supreme Court discussed the concept of permanent trespass as follows: "When a man commits an act of trespass upon another's land, and thereby injures such other at once and to the full extent that such act will ever injure him, he is liable at once for this one act and all its effects; and the time of the statute of limitations runs from the time of such act of trespass." Id. at 625. The court then went on to discuss the concept of continuing trespass as follows:
 {¶ 14} "And when the owner of land rightly and lawfully does an act entirely on his own land, and by means of such act puts in action or directs a force against or upon, or that affects, another's land, without such other's consent or permission, such owner and actor is liable to such other for the damages thereby so caused the latter, and at once a cause of action accrues for such damages; and such force, ifso continued, is continued by the act of such owner and actor, and it may be regarded as a continuing trespass or nuisance; and each additional damage thereby caused is caused by him, and is an additional cause of action; and, until such continued trespass or nuisance by adverse use ripens into and becomes a presumptive right and estate in the former, the latter may bring his action." Id. at 627. (Emphasis added.)
 {¶ 15} Applying the following concepts to the facts of the case, the supreme court then found that the property owner suffered from a continuing trespass as follows: "Valley Railway Company diverted the stream, and turned its course and current against and over the lands of Franz, and thereby caused the injury complained of. The company remained upon its own land, and cut the new channel, and took control of thestream, and directed its course when the same passed from its land and its control, and has ever since so controlled and directed the streamthat has caused the damage complained of. The amended petition states a cause of action that is not barred by the statute of limitations provided for such cases." Id. at 628. (Emphasis added.)
 {¶ 16} Thus, "[a] permanent trespass occurs when the defendant's tortious act has been fully accomplished, but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant. In contrast, a continuing trespass results when the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights." Reith, 2005-Ohio-4852
at ¶ 49. See, also, Weir v. East Ohio Gas Co., Mahoning App. No. 01 CA 207, 2003-Ohio-1229; Hartland v. McCullough Constr., Inc. (July 14, 2000), Ottawa App. No. OT-99-058; and Frisch v. The Monford Supply Co. (Nov. 21, 1997), Hamilton App. No. C-960522.
 {¶ 17} Based upon Franz and the foregoing definitions, we find that "a continuing trespass occurs when there is some continuing or ongoing tortious activity attributable to the defendant. Conversely, a permanent trespass occurs when the defendant's tortious act has been fully accomplished." Abraham v. BP Exploration Oil, Inc.,149 Ohio App.3d 471, 2002-Ohio-4392, ¶ 27. "Thus, the determinative question centers upon the nature of the defendant's tortious conduct, not upon the nature of the damage caused by that conduct." Id. That is, a trespass under Ohio law is a continuing trespass only if the trespass itself, and not the ongoing injury or harm caused by a past, completed misdeed, is continuing. Ongoing conduct is the key to a continuing trespass. But see, contra, Nieman v. NLO, Inc. (C.A.6, 1997), 108 F.3d 1546 (a claim for continuing trespass may be supported by proof of continuing damages and need not be based on allegations of continuing conduct); andBoll v. Griffith (1987), 41 Ohio App.3d 356.
 {¶ 18} After reviewing the record, we find that this case involves a permanent rather than a continuing trespass. The damage to the Sextons' property occurred when the subdivision, along with its allegedly improperly designed storm water system, was constructed. The record shows that McGill completed its engineering services by 1994. Rishon's work on the subdivision, in turn, ended in 1995. While the Sextons experienced a severe flooding on their property in July 2001, they have had flooding problems on their property ever since construction of the subdivision began. Their 1995 letter to the city directly attributes their water problems to the construction of the subdivision. The tortious act was therefore completed in 1994 for McGill and in 1995 for Rishon, and there was no ongoing conduct by either McGill or Rishon even though damage to the Sextons' property continued. Since the Sextons' complaint against McGill and Rishon was not filed until 2003, well outside of the four-year statute of limitations, it was time-barred.
 {¶ 19} We therefore hold that the trial court did not err by granting summary judgment in favor of McGill and Rishon on statute of limitations ground. The Sextons' first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE TRIAL COURT ERRED IN FINDING PLAINTIFFS/APPELLANTS FAILED TO ALLEGE DEFENDANT/APPELLEE CITY OF MASON NEGLIGENTLY MANAGED THE STORM WATER SYSTEM."
 {¶ 22} In its decision granting summary judgment in favor of the city, the trial court found that:
 {¶ 23} The Sextons "allege that the City of Mason and its Engineering Department negligently permitted the other parties Defendant to design and construct the development's storm water system in such a way that excess runoff flooded [the Sextons'] property. They also allege that Mason failed to remedy the problem, though it was asked to do so. [The Sextons] do not allege in their complaint that Mason undertook to manage any sewer system on the development, or that they did so negligently. Consequently, Mason's involvement with the subject development must be analyzed in light of its oversight or approval of the construction of a storm water system on the development. * * * There is neither an allegation, nor a reference to any part of the record that supports the idea Mason maintained the `storm sewer' system designed and installed by the other parties Defendant, or that it did so negligently." The trial court then went on to find that the city was entitled to sovereign immunity.
 {¶ 24} The Sextons argue that the trial court erred by finding they failed to plead that the city negligently managed the storm water system. The Sextons contend that in light of the overall liberal allowances accorded to pleadings under the Ohio Rules of Civil Procedure, their averments in their amended complaint sufficiently plead the city's negligence in maintaining the storm water system. The Sextons do not, "at this time, addres[s] the sovereign immunity or proprietary versus governmental function" of the city.
 {¶ 25} Civ.R. 8(A) provides that a complaint must contain a short and plain statement of the claim showing that the party is entitled to relief and a demand for judgment for the relief to which the party claims to be entitled. A pleading setting forth a claim for relief "need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, * * * or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Fancher v. Fancher (1982), 8 Ohio App.3d 79, 83.
 {¶ 26} In their amended complaint, the Sextons alleged that Rishon and McGill were negligent in constructing the subdivision without an adequate storm water system, and that McGill was negligent in its drawings, design, and engineering of the subdivision. The Sextons also alleged that the city (1) was negligent in allowing the subdivision to be constructed without an adequate storm water system; (2) was negligent in releasing the bond of Rishon and McGill when it was aware that Rishon and McGill did not comply with the engineering and building specifications mandated by the city; (3) failed to rectify the problem caused by the water runoff from the subdivision after being informed of the problem; and (4) breached its promise to fix and correct the problem.
 {¶ 27} According to the Sextons' amended complaint, because the city "has taken no action to either repair the damage [to their] property [or] * * * taken precautions to eliminate the same or similar actions in the future," and because the city "was placed on notice * * * of the danger resulting from it negligently allowing unreasonable amounts of surface water to flow on, into, and across" their property, they have suffered damage to their property, and loss of enjoyment. The Sextons also alleged a constitutional taking claim based upon the "superimpose[ition]" by the city, Rishon, and McGill of "their drainage, storm sewer system (or lack thereof) upon the natural watercourse in a manner not consistent with [the Sextons'] riparian rights as an adjoining landowner."
 {¶ 28} Upon reviewing the Sextons' amended complaint, we agree with the trial court that the Sextons did not directly allege that the city undertook to manage any storm water system on the subdivision, or that it did so negligently. Nor are there facts alleged to support any argument that the city maintained the storm water system designed and installed by the other parties, or that it did so negligently. The amended complaint did not place the city on notice that it would face a claim it undertook to manage and/or negligently maintained the subdivision's storm water system. We therefore hold that the Sextons failed to adequately allege under Civ.R. 8(A) that the city negligently managed the subdivision's storm water system. The Sextons' second assignment of error is accordingly overruled.
 {¶ 29} Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.