[Cite as *Riscatti v. Prime Properties Ltd. Partnership*, 2012-Ohio-2921.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 97270 and 97274**

## ALESSANDRA RISCATTI, ET AL.

PLAINTIFFS-APPELLEES

vs.

## PRIME PROPERTIES LIMITED PARTNERSHIP, ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
## AFFIRMED

Civil Appeals from the
Cuyahoga County Common Pleas Court
Case Nos. CV-714827 and CV-735966

**BEFORE:**    Boyle, J., Stewart, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**    June 28, 2012

**ATTORNEYS FOR APPELLANTS**

**For Cuyahoga County**

William D. Mason
Cuyahoga County Prosecutor
Michael A. Dolan
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

**For Northeast Ohio Regional Sewer District**

Regina M. Massetti
Julie Blair
Northeast Ohio Regional Sewer District
3800 Euclid Avenue
Cleveland, Ohio    44115


**ATTORNEYS FOR APPELLEES**

**For Alessandra Riscatti, et al.**

Drew Legando
Jack Landskroner
Landskroner, Grieco, Madden, LLC
1360 West Ninth Street, Suite 200
Cleveland, Ohio 44113-1254

Stephanie Brooks
Steve Baughman Jensen
Allen M. Stewart
Allen Stewart, P.C.
325 North St. Paul Street
Suite 2750
Dallas, Texas    75201

Thomas C. Merriman
1360 West 9th Street
Suite 200
12th Floor
Cleveland, Ohio    44113

Chris Nidel
Nidel Law, P.L.L.C.
2002 Massachusetts Avenue, N.W.
Suite 3
Washington, D.C.    20036

**For High Point Marathon, Ltd.**

Waheeba Abu-Zahrieh
P.O. Box 360214
Strongsville, Ohio    44136

**For City of Parma**

Timothy G. Dobeck
Law Director/Chief Prosecutor
City of Parma
6611 Ridge Road
Parma, Ohio    44129

**For Petroleum Underground Storage Tank**

Mike DeWine
Ohio Attorney General
Cheryl R. Hawkinson
Assistant Attorney General
Executive Agencies
30 East Broad Street, 26th Floor
Columbus, Ohio    43215-3428

**For Prime Properties Limited Partnership**

Michael R. Blumenthal
David B. Maxman
Waxman Blumenthal, LLC
29225 Chagrin Boulevard

Suite 350
Cleveland, Ohio    44122

**For Speedway Superamerica LLC, et al.**

Robert B. Casarona
Christine M. Garritano
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, 9th Floor
Cleveland, Ohio    44114

Shane A. Farolino
Roetzel & Andress, LPA
222 South Main Street
Suite 400
Akron, Ohio    44308

**For United Petroleum Marketing LLC, et al.**

Charles A. Nemer
McCarthy, Lebit, Crystal & Liffman
101 West Prospect Avenue
Suite 1800
Cleveland, Ohio    44115

MARY J. BOYLE, J.:

{¶1} This court sua sponte consolidated the appeals by defendants-appellants Cuyahoga County and Northeast Ohio Regional Sewer District ("Sewer District").[1]

{¶2} Cuyahoga County and the Sewer District (collectively referred to as "defendants") appeal from a trial court's judgment denying their motion for judgment on the pleadings regarding their statute of limitations defense and the trial court's judgment denying their motion for summary judgment with respect to the issue of sovereign immunity. They raise two assignments of error for our review:

"[1.] The trial court erred in denying defendants-appellants' [Civ.R. 12] motions as the statute of limitations set forth in [R.C.] 2744.04 bars plaintiff's [sic] claims.

"[2.] The trial court erred in denying 'in part' defendants-appellants' motion for summary judgment as the appellant [sic] is immune from liability under [R.C.] 2744.02 and the appellee's [sic] failed to meet their evidentiary burden under [Civ.R. 56]."

{¶3} Finding no merit to their arguments, we affirm the decision of the trial court.

Procedural History and Factual Background

{¶4} Plaintiffs-appellees are current and former residents who live or lived on State Road in Parma. On August 29, 2009, an explosion occurred in the basement of the

[1]The city of Parma ("City") has also appealed, but its appeal will remain separate and not be consolidated with the County's and the Sewer District's appeal. *See Riscatti v. Prime Properties*, 8th Dist. No. 97254 (the City's appeal).

home of plaintiffs Alessandra and Elisabetta Riscatti and Laszlo Beres ("Riscattis"). According to the complaint, "flames exploded from the sanitary sewer in the basement." An investigation revealed that the explosion was caused by concentrated gasoline vapors that originated from drain pipes connected to underground storage tanks beneath a Marathon gas station near the Riscattis' home. The drain pipes, built by Marathon in 1982, were connected to the sanitary sewer main and designed to keep the underground tank from floating if the ground-water table rose in response to rain or snow melt. As the water level within the cavity rose, the drain pipes flushed the excess contents of the underground storage cavity into the sanitary sewer main. Thus, groundwater contaminated with gasoline from the storage tanks would repeatedly be discharged into the sewer main, especially during heavy rains.

{¶5} The City owns the public sanitary sewer lines. But as of May 1, 2008, the County agreed to provide mainline cleaning and televising services to the sewer lines, and to provide maintenance of the sewer lines in the public rights of way.

{¶6} The Sewer District provides sewer maintenance to various municipalities in the region, but only if the municipality contracts with the Sewer District. The Sewer District filed a motion to dismiss, asserting that the City never entered into an agreement with the Sewer District, and thus, the Sewer District never had control or maintenance responsibilities over the sewer lines in Parma.[2]

---

[2]The trial court denied the Sewer District's motion to dismiss. The Sewer District has not raised this issue on appeal.

{¶7} Several of the plaintiffs allege that they have smelled gasoline over the years, and some claim to have smelled gasoline in their homes since 1982. Plaintiffs assert that they repeatedly complained of the smell to various entities, including the City, the Sewer District, and the County, but claim they were told that the odors in their home were not caused by gasoline from the Marathon gas station. According to plaintiffs, they were told that the odors were caused by "cooking, natural gas, or sewage gas." Despite plaintiffs' complaints, plaintiffs contend that the various entities "made no effort to determine whether * * * toxic substances originating from the [Marathon station] were penetrating plaintiffs' homes." The gas station was ordered to shut down operations on September 1, 2009, and the storage tanks were capped.

{¶8} Plaintiffs brought suit against the owners and operators of the Marathon gas station (including Marathon Oil Company and Prime Properties Limited Partnership), the Sewer District, the City, the County, and various other entities, alleging that "reasonable inspection would have uncovered that the sanitary sewer system was transmitting [gasoline] to dozens of private homes." The various entities filed several motions, including motions to dismiss and/or motions for judgment on the pleading, asserting multiple defenses. Plaintiffs allege in their complaint that defendants' failure to undertake reasonable inspection caused their damages.

{¶9} The County moved for judgment on the pleadings, claiming the statute of limitations had run. It further moved for summary judgment based on sovereign immunity. The Sewer District joined in the County's motions. The trial court denied

both of the motions. It is from these judgments that defendants appeal, claiming the trial court erred in doing so.

Statute of Limitations

{¶10} In their first assignment of error, defendants argue that the trial court erred when it denied their motion for judgment on the pleadings based on their statute of limitations defense.

{¶11} Before we review the merits of this assignment of error, however, we must first determine whether we have jurisdiction to do so. Appellate courts have jurisdiction to review the final orders of inferior courts within their districts. Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2501.02. If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter and it must be dismissed. *See Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989). In the event that the parties involved in the appeal do not raise this jurisdictional issue, an appellate court must raise it sua sponte. *See Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus; *Whitaker-Merrell Co. v. Geupel Constr. Co.*, 29 Ohio St.2d 184, 186, 280 N.E.2d 922 (1972).

{¶12} An appellate court has jurisdiction to review, affirm, modify, set aside, or reverse judgments or final orders. R.C. 2501.01. R.C. 2505.02(B) provides that

> [a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

(3) An order that vacates or sets aside a judgment or grants a new trial;

(4) An order that grants or denies a provisional remedy * * *;

(5) An order that determines that an action may or may not be maintained as a class action[.]

{¶13} Generally, a denial of a motion to dismiss is not a final appealable order. *Pannunizio v. Hubbard*, 11th Dist. No. 2003-T-0143, 2004-Ohio-3930, ¶ 5. That is because "the denial of a motion to dismiss does not determine the primary action or prevent a judgment." *Huntington Natl. Bank v. Ewing Lumber Co., Inc.,* 10th Dist. No. 82AP-785, 1983 WL 3450, *1 (Apr. 5, 1983). "A motion for judgment on the pleadings is the same as a motion to dismiss filed after the pleadings are closed." *Accelerated Sys. Integration v. Hausser & Taylor, LLP*, 8th Dist. No. 88207, 2007-Ohio-2113, ¶ 33.

{¶14} R.C. 2505.02(B)(1) is the only possibility for a final appealable order in this case, as none of the other subsections could apply. Thus, the question we must determine is whether the trial court's denial of defendants' motion for judgment on the pleadings based on the statute of limitations affected a substantial right of the defendants such that the denial was a final appealable order. We find that it did not.

{¶15} In addressing whether a judgment denying a motion to dismiss based on the argument that the statute of limitations had expired, the late Chief Justice Thomas J. Moyer explained (when he was a judge at the Tenth Appellate District):

The rights protected by statutes of limitations are not irreparably lost absent immediate review, but, rather, the prejudice caused by a delayed trial and stale evidence may be best assessed after a trial. Our analysis above and Ohio law supports the conclusion * * * that the statute of limitations seeks to avoid unnecessary, prejudicial, and delayed trials, but does not accord an absolute right to be free from trial.

Prior to the adoption of the Ohio Civil Rules, it was well-settled that no final appealable order existed upon the overruling or sustaining of a demurrer to pleadings, since such an order, without more, left the action still pending in the lower court. Accordingly, *Hughes v. Everett* (App.1955), 129 N.E.2d 531, 71 Ohio Law Abs. 61, and *Trunk v. Hertz Corp.* (App.1964), 200 N.E.2d 894, 95 Ohio Law Abs. 364 [32 O.O.2d 264], held that the overruling of a demurrer based on the running of the statute of limitations was not a final appealable order.

*State v. Torco Termite Pest Control*, 27 Ohio App.3d 233, 235-236, 500 N.E.2d

401 (10th Dist.1985).

{¶16} In *Hughes v. Zordich*, 7th Dist. No. 99 C.A. 167, 2001 WL 1740069 (Apr.

25, 2001), the court addressed the appealability of a denial of a motion to dismiss based

upon the statute of limitations. After acknowledging the constitutional limitations on the

jurisdiction of appellate courts and reviewing the definition of a "final order" set forth in

R.C. 2505.02(B), the court concluded that the trial court's order did not fit into any of the

categories listed in the statute: "Such a ruling does not determine the action or prevent a

judgment. * * * [S]hould [the appellant] not prevail at trial, she will then have occasion to

appeal that judgment." *Id.* at *2.

{¶17} The fact that defendants are political subdivisions does not change this

analysis. Although R.C. 2744.02(C) provides that an order denying "a political

subdivision * * * the benefit of an alleged immunity from liability * * * is a final order,"

it says nothing about the statute of limitations defense or any other defense for that matter.  In *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus, the Ohio Supreme Court held that "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)."   But an appeal from such a decision is limited to the review of alleged errors in the portion of the trial court's decision that denied the political subdivision the benefit of immunity.  *See, e.g.*, *CAC Bldg. Properties v. Cleveland*, 8th Dist. No. 91991, 2009-Ohio-1786, ¶ 9, fn. 1; *Carter v. Complete Gen. Constr. Co.*, 10th Dist. No. 08AP-309, 2008-Ohio-6308, ¶ 8.

{¶18} Thus, we conclude that an order denying a political subdivision's motion based on the statute of limitations defense is not an order denying that political subdivision "the benefit of alleged immunity."   *See also Essman v. Portsmouth*, 4th Dist. No. 08CA3244, 2009-Ohio-3367 (because trial court's decision denying political subdivision's motion based on its statute of limitations defense did not deny the political subdivision the benefit of R.C. Chapter 2744 immunity, appellate court lacked jurisdiction to consider it because it was not a final appealable order); *Guenther v. Springfield Twp. Trustees*, 2d Dist. No. 2010-CA-114, 2012-Ohio-203 (citing *Essman* for the same proposition).

{¶19} We recognize that the trial court in this case added the Civ.R. 54(B) language, "no just cause for delay," in its judgment denying defendants' motion for

judgment on the pleadings. But "the mere addition of Civ.R. 54(B) language to what is not a final order does not transform that entry into a final appealable order." *Sason v. Shepherd*, 11th Dist. No. 2007-L-199, 2008-Ohio-173, ¶ 3, citing *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 354, 617 N.E.2d 1136 (1993) ("the phrase 'no just reason for delay' is not a mystical incantation which transforms a nonfinal order into a final appealable order"). Consequently, the trial court's invocation of the Civ.R. 54(B) language does not convert the judgment into a final order.

{¶20} Accordingly, this court lacks jurisdiction to consider the trial court's denial of defendants' motion for judgment on the pleadings based on the statute of limitations defense. The defendants' first assignment of error is overruled.

<u>Summary Judgment Standard</u>

{¶21} In their second assignment of error, defendants argue that the trial court erred when it denied their summary judgment motion based on sovereign immunity.

{¶22} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Civ.R. 56(C); *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).

**{¶23}** At the outset, we note that plaintiffs contend that the trial court did not rule on the County's and the Sewer District's summary judgment motion, holding it in abeyance until discovery was completed. But any order that denies a political subdivision the benefit of alleged immunity is a final appealable order, even if the order does not address the issue, as the case here. *See DiGiorgio v. Cleveland*, 196 Ohio App.3d 575, 2011-Ohio-5824, 964 N.E.2d 495; *Hubbell*, 115 Ohio St.3d 77. Accordingly, we find no procedural irregularity in addressing defendants' alleged immunity.

<u>R.C. Chapter 2744</u>

**{¶24}** The Supreme Court set forth a three-tiered analysis to determine whether a political subdivision is immune from tort liability: the first tier is to establish immunity under R.C. 2744.02(A)(1); the second tier is to analyze whether any of the exceptions to immunity under R.C. 2744.02(B) apply; if so, then under the third tier, the political subdivision has the burden of showing that one of the defenses of R.C. 2744.03 applies. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998); *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 10-12. If a defense applies, then immunity is reinstated. *Id.*

**{¶25}** R.C. 2744.02(A)(1) provides a general grant of immunity as follows: "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or

an employee of the political subdivision in connection with a governmental or proprietary function."

{¶26} R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). *See Ryll v. Columbus Fireworks Display Co.*, 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, ¶ 25. The subsection pertinent to this case, R.C. 2744.02(B)(2), subjects a political subdivision to liability for "the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." A "proprietary function" includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d).

{¶27} Under R.C. 2744.02(B)(2), however, a political subdivision cannot be held liable for the negligent performance of acts by their employees with respect to a governmental function. A "governmental function" includes "[t]he provision or nonprovision, planning or design, construction or reconstruction of * * * a sewer system." R.C. 2744.01(C)(2)(l).

{¶28} In the present case, the parties do not dispute the fact that defendants are political subdivisions and therefore entitled to the general grant of immunity under R.C. 2744.02(A)(1). Instead, the dispute centers upon whether, under the second prong of the analysis, an exception to defendants' blanket immunity applies; specifically, whether R.C. 2744.02(B)(2) applies.

{¶29} Plaintiffs argue that their claims challenge the "post-design, post-construction negligent conduct of defendants, which failed to inspect the sewer and to take steps to repair the problem [that] caused the plaintiffs' damage." Plaintiffs assert that the governmental entities "had a duty to maintain, operate, and upkeep the sanitary sewer system and or to destroy the offending drain pipes." They further allege that the governmental entities' negligent failures to inspect the sewer, combined with their failure to repair or destroy the offending drain pipes that allowed the contamination, caused the plaintiffs' injuries. Thus, plaintiffs argue that defendants were not immune from liability under R.C. 2744.02 because they negligently performed a proprietary function, specifically the maintenance of the sewer system, under R.C. 2744.02(B)(2).

{¶30} Defendants, on the other hand, argue that plaintiffs' "theory of liability — that the publicly available sanitary sewerage system vented noxious gases onto plaintiffs' property and into their homes, challenges the design, not the operation, of the system." Thus, defendants contend that they are immune from liability for acts that relate to a governmental function.

{¶31} In support of their summary judgment motion, defendants presented an affidavit of William Schneider, the County's chief sanitary engineer, who stated that the Parma sewer system was a gravity-based system. He averred that gravity-based systems are designed to facilitate the discharge of household sanitary waste into the public sanitary sewer system. Noxious sewer gases are then vented into the environment through soil stacks in each resident's home (soil stacks are vent pipes that rise through

each house and extend several feet above the roof).   Defendants contend that plaintiffs are claiming it is this design — this gravity-based system — that caused their injuries.

{¶32} Ohio courts have long recognized that a city can be liable for the negligent maintenance of its sewers.   *See Portsmouth v. Mitchell Mfg. Co.*, 113 Ohio St. 250, 148 N.E. 846 (1925).   In *Mitchell Mfg.*, the Supreme Court held "that the construction and institution of a sewer system is a governmental matter, and that there is no liability for mere failure to construct sewers.   However, * * * the operation and upkeep of sewers is not a governmental function, but is a ministerial or proprietary function of the city."   *Id.* at 255.

{¶33} The Supreme Court announced a similar rule in *Doud v. Cincinnati*, 152 Ohio St. 132, 137, 87 N.E.2d 243 (1949), stating:

> A municipality is not obliged to construct or maintain sewers, but when it does construct or maintain them it becomes its duty to keep them in repair and free from conditions which will cause damage to private property * * *.   The municipality becomes liable for damages caused by its negligence in this regard in the same manner and to the same extent as a private person under the same circumstances.

{¶34} "Determining whether an allegation of negligence relates to the maintenance, operation, or upkeep of a sewer system or, instead, the design, construction, or reconstruction of a sewer system is not always a simple inquiry." *Essman v. Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837, ¶ 32.   A complaint is properly characterized as a maintenance, operation, or upkeep issue when "remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of

deterioration." (Citations omitted.) *Id.* But a complaint presents a design or construction issue if "remedying a problem would require a [political subdivision] to, in essence, redesign or reconstruct the sewer system." (Citations omitted.) *Id.* at ¶ 32-33.

{¶35} After reviewing the record before us, we conclude that plaintiffs' complaint alleges the negligent performance of a proprietary function, not a governmental function. Plaintiffs allege that defendants' failure to inspect and discover the hazardous gasoline caused their injuries. Plaintiffs are not alleging that the design of the sanitary sewer system caused their injuries. Thus, an exception to immunity applies under R.C. 2744.01(G)(2)(d) because of defendants' alleged negligence in performing a proprietary function.

{¶36} We further conclude that genuine issues of material fact remain, including questions as to whether defendants' employees negligently failed to inspect the sanitary sewer lines, whether defendants were aware or should have been aware of the residents' complaints, and whether defendants knew or should have known of the alleged documented gasoline leaks that had occurred at the Marathon station. If so, then they had a duty to inspect the sanitary sewer lines to determine if there was an issue with gasoline being leaked from the Marathon gas station into the main sanitary sewer line. It is our view that the trial court did not err when it denied defendants' summary judgment motion based on genuine issues of material fact remaining as to whether defendants' employees negligently performed their duty to inspect.[3]

---

[3]Although the Sewer District has not raised this issue as an assignment of error, we note that if

**{¶37}** Defendants argue that plaintiffs' claims fail as a matter of law because there is no evidence that the sanitary sewer system was malfunctioning in any way. But this case is not analogous to those cases cited by defendants that find the plaintiffs' complaint actually challenges the design of a sewer system, even though it purports to challenge the maintenance of it. *See Essman*, 2010-Ohio-4837, and *Zimmerman v. Summit Cty.*, 9th Dist. No. 17610, 1997 WL 22588 (Jan. 15, 1997).

**{¶38}** In *Essman*, 2010-Ohio-4837, the homeowners alleged that the city negligently operated the sewer system by failing to monitor the water levels in the system so as to prevent sewage intrusions onto homeowners' properties. The sewer system was not designed to have water monitors. The court held that the homeowners' true complaint (the sewer system should have had water monitors) related to the original design of the sewer system, a governmental function. *Id.* at ¶ 47. The court reasoned that the city would be required to perform extensive redesigning or reconstructing of the sewer system to correct the problem. *Id.* at ¶ 46.

**{¶39}** In *Zimmerman*, the homeowner alleged that the county negligently maintained and operated the sewer system by dumping sewage into a stream that flowed across their property. The court disagreed with the homeowner's characterization of the issue as negligent maintenance and operation. *Id.* at *3. The court found that the county's decision to pump sewage and rain water into the stream was a response to the

---

the Sewer District never had control or maintenance responsibilities over Parma's sewer lines, then it should be dismissed from the case.

sewer system's inability as designed and constructed to handle the volume of materials that currently passed through it. *Id.* The court held that this was not a problem that the county could remedy through routine maintenance; rather, it would require extensive redesigning and reconstructing of the system to meet current demands. *Id.*

{¶40} In the present case, however, the sanitary sewer lines were designed to vent noxious sewer gases, not dangerous gasoline or gasoline vapors. Gasoline entering plaintiffs' homes was not caused by defendants constructing or designing the sewer system. Further, to correct the problem, defendants would not have been required to redesign or reconstruct the sewer system. Upon inspecting the sewer lines, defendants could have easily discovered that gasoline from the storage tanks was leaking into the main sewer line, which is exactly what happened. Within just days of the explosion, the cause was determined. And within days of the explosion, the offending storage tanks were capped and the gas station ordered to shut down.

{¶41} Defendants further argue that there are no material questions of fact remaining because it was not responsible for the maintenance of the residents' private sewer lines (the sewer lines that connect from the main sewer line to each residence). If the gasoline had not been in the main lines, however, it would not have reached the plaintiffs' homes through their private sewer lines. Defendants' second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

MELODY J. STEWART, P.J., CONCURS;
KENNETH A. ROCCO, J., DISSENTS WITH SEPARATE OPINION

KENNETH A. ROCCO, J., DISSENTING:

{¶42} I respectfully dissent from the majority opinion's disposition of these appeals. In my view, the majority opinion reads both R.C. Chapter 2744 and the Ohio Supreme Court's decisions with respect to that chapter too narrowly. I believe the trial court's denial of the defendants' motion for judgment on the pleadings with respect to its statute of limitations defense constitutes a final order, because it denied the defendants "the benefit of an alleged immunity." Furthermore, I believe the trial court's decision was wrong. Consequently, I would reverse the trial court's decision on that basis and would enter judgment for the defendants on the appellees' complaints.

{¶43} I base my beliefs on the wording of the statutes and on the language the Ohio Supreme Court uses to interpret those statutes.

{¶44} R.C. 2744.02(C) states:

{¶45}  "An order that denies a political subdivision or an employee of a political subdivision the *benefit of an alleged immunity from liability as provided in this chapter* or any other provision of the law is a final order."   (Emphasis added.)

{¶46} The "chapter" includes R.C. 2744.04, which provides:

(A) An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by *any act or omission in connection with a governmental or proprietary function*, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, *shall be brought within two years* after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code. The period of limitation contained in this division shall be tolled pursuant to section 2305.16 of the Revised Code. *This division applies to actions brought against political subdivisions by all persons*, governmental entities, and the state.   (Emphasis added.)

The chapter also contains R.C. 2744.09, which states in pertinent part:

This chapter does not apply to, and shall not be construed to apply to, the following:

* * *

(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises

out of the employment relationship between the employee and the political subdivision.

{¶47} In *Sampson v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. No. 93441, 2010-Ohio-1214, this court found no lack of jurisdiction that prevented a review. I cannot see the distinction between a denial of immunity based upon a trial court's decision that the "defense" contained in R.C. 2744.09 does not apply and a trial court's decision that a "defense" contained in R.C. 2744.04 does not apply. Both are decisions that deny "the benefit of an alleged immunity from liability as provided in this chapter."

{¶48} Moreover, in reviewing this court's decision in *Sampson*, the Ohio Supreme Court made no distinction between the "exceptions" and the "defenses" to immunity in considering the applicability of R.C. 2744.02(C) to the action. *Sampson*, 131 Ohio St.3d 418, 2012-Ohio-570, - N.E.2d -, ¶ 7. Without question, *Sampson* determined that a denial of immunity based upon R.C. 2744.09(B) fell within the scope of a final appealable order for purposes of immediate review. R.C. 2505.02 did not enter the analysis.

{¶49} This court previously has held that R.C. 2744.04 is a special statute that applies to tort actions brought against political subdivisions and that prevails over more general statutes of limitations. *Dominion Resource Servs. v. Cleve. Division of Water*, 8th Dist. No. 90641, 2008-Ohio-4855, ¶ 6; *Read v. Fairview Park*, 146 Ohio App.3d 15, 764 N.E.2d 1079 (8th Dist.2001); *Fifth Third Bank v. Cope*, 162 Ohio App.3d 838,

2005-Ohio-4626, 835 N.E.2d 779 (12th Dist.); *see also Summerville v. Forest Park*, 128

Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522.

{¶50} Because R.C. 2744.04 is not only a special statute but also is a part of the

political subdivision "chapter," I conclude that it falls within the exception to R.C.

2505.02 that is set forth in R.C. 2744.02(C).   The following language in *Summerville v.*

*Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 2 and ¶ 38-40

lends support to such a conclusion:

> R.C. Chapter 2744 governs political-subdivision immunity. Pursuant to R.C. 2744.02(C), orders denying employees of a political subdivision immunity from liability *under any provision of law* are final, appealable orders. * * *
>
> * * *
>
>      * * *   The General Assembly enacted R.C. Chapter 2744, stating that "the protections afforded to political subdivisions and employees of political subdivisions by this act are urgently needed in order to ensure the continued orderly operation of local governments and the continued ability of local governments to provide public peace, health, and safety services to their residents." Am.Sub.H.B. No. 176, Section 8, 141 Ohio Laws, Part I, 1733. We noted in *Hubbell*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, that "'[t]he manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions.'" *Id.* at ¶ 23, quoting *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105.
>
>      We also note that judicial economy is better served by a plain reading of R.C. 2744.02(C). *Id.* at ¶ 24. "'[D]etermination of whether a political subdivision is immune from liability is usually pivotal to the ultimate outcome of a lawsuit. Early resolution of the issue of whether a political subdivision is immune from liability pursuant to R.C. Chapter 2744 is beneficial to both of the parties. If the appellate court holds that the political subdivision is immune, the litigation can come to an early end, with the same outcome that otherwise would have been reached only after trial, resulting in a savings to all parties of costs and attorney fees.

Alternatively, if the appellate court holds that immunity does *not* apply, that early finding will encourage the political subdivision to settle promptly with the victim rather than pursue a lengthy trial and appeals. Under either scenario, both the plaintiff and the political subdivision may save the time, effort, and expense of a trial and appeal, which could take years.'" (Emphasis sic.) *Id*. at ¶ 25, quoting *Burger v. Cleveland Hts.* (1999), 87 Ohio St.3d 188, 199-200, 718 N.E.2d 912 (Lundberg Stratton, J., dissenting). "'As the General Assembly envisioned, the determination of immunity could be made prior to investing the time, effort, and expense of the courts, attorneys, parties, and witnesses * * *.'" *Id*. at ¶ 26, quoting *Burger* at 200 (Lundberg Stratton, J., dissenting).

These policy considerations apply equally whether the immunity in question is based on R.C. Chapter 2744 or another provision of the law, including federal qualified immunity. Indeed, federal courts have applied a similar rationale in holding that orders denying a public official the benefit of qualified immunity are final and appealable. See, e.g., *Mitchell v. Forsyth* (1985), 472 U.S. 511, 525-530, 105 S.Ct. 2806, 86 L.Ed.2d 411. Qualified immunity "is an *immunity from suit* rather than a mere defense to liability*; * * * it is effectively lost if a case is erroneously permitted to go to trial." (Emphasis sic.) *Id.* at 526. Qualified immunity provides immunity not only from liability but from the "consequences" of a suit, including "'the general costs of subjecting officials to the risks of trial-distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Id*., quoting *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396. Failure to give effect to the language of R.C. 2744.02(C) by barring immediate appeal of denials of qualified immunity for alleged violations of Section 1983 would defeat the purpose for which the immunity exists.

### Conclusion

Pursuant to R.C. 2744.02(C), an order that denies an employee of a political subdivision immunity from liability under any provision of law is a final order. * * * (Underscoring added.)

**{¶51}** With the foregoing language, *compare Supportive Solutions Training Academy v. Electronic Classroom of Tomorrow*, 8th Dist. Nos. 95022 and 95287, 2012-Ohio-1185 (denial of motion simply to amend complaint to include affirmative

defense of sovereign immunity not a final order), and *Duncan v. Cuy. Community College*, 8th Dist. No. 97222, 2012-Ohio-1949 (pursuant to R.C. 2744.09(A), denial of political subdivision's motion for judgment on pleadings on plaintiff's breach of contract claim not final).

{¶52} The majority opinion relies upon *Guenther v. Springfield Twp. Trustees,* 2d Dist. No. 2010-CA-114, 2012-Ohio-203, in determining that the order in this case is not final and appealable, but *Guenther* fails to mention the Ohio Supreme Court's decisions in either *Summerville* or *Mynes v. Brooks*, 124 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 511. In addition, the majority opinion's reliance upon *Essman v. Portsmouth*, 4th Dist. No. 08CA3244, 2009-Ohio-3367, is problematic because *Essman* predates *Mynes, Summerville*, and *Sampson*, and, too, the trial court in *Essman* made no Civ.R. 54(B) certification.

{¶53} In this case, appellees alleged in their amended complaints that defendants were negligent. According to R.C. 2744.04, therefore, appellees were required to commence their actions against the defendants within two years after their cause of action "accrued." Because they did not, I believe the trial court erred in denying the defendants' motion for judgment in their favor on the pleadings.

{¶54} According to the amended complaints, offensive odors caused by gasoline leaking from the "Tank System" into the State Road sewer line began to enter appellees' homes through their connections to that line in 1982. Parma did nothing at that time; the city only "repeatedly" assured them that the smells they experienced "were *not* caused by

the Tank System," and "repeatedly advised [them] the gasoline odor came from other sources." Subsequently, appellees complained to the other defendants as well, but received the same answers Parma gave them.

{¶55} Appellees sought in this way to plead that all the defendants' negligence, i.e., their failure to "maintain" the State Road sewer line, was not fixed in time, but, rather, constituted a "continuing tort," as considered in *Sexton v. Mason*, 117 Ohio St.3d 275, 2008-Ohio-858, 883 N.E.2d 1013. Appellees' effort, however, contorted the applicable analysis.

{¶56} In *Sexton*, the Ohio Supreme Court did not consider the tort of negligence; rather, the court distinguished between a continuing *trespass* and a completed *trespass*, stating as follows:

> The defendant's *ongoing conduct or retention of control* is the key to distinguishing a *continuing trespass* from a permanent trespass. We hold that a continuing trespass in this context occurs when there is some continuing or ongoing allegedly tortious *activity* attributable to the defendant. A *permanent* trespass occurs when the defendant's allegedly tortious *act* has been *fully accomplished*. (Emphasis added.)

{¶57} The court in *Sexton* noted that a trespass "typically occurs when a defendant *enters* another person's land * * * ." (Emphasis added.) The *Sexton* court reasoned that a "continuing trespass" thus exists when "force" is "continued by the act" of the "defendant actor." This reasoning is in conformity with the common law definition of a "trespass" as being an "invasion." *Black's Law Dictionary* (4th Ed.1951).

{¶58} A continuing trespass thus "occurs when there is some continuing or ongoing tortious *activity* attributable to the defendant." *Id*. "Conversely, a permanent

trespass occurs when the defendant's tortious *act* has been *fully accomplished*. * * * Thus, the determinative question centers upon the *nature of the defendant's tortious conduct*, *not* upon the *nature of the damage caused* by that conduct." *Id.* (Emphasis added.) The *Sexton* court quoted the following as the applicable analysis:

> A trespass under Ohio law is a continuing trespass only if *the trespass itself*, and *not* the ongoing injury or harm caused by a past, *completed misdeed*, is continuing. *Ongoing conduct is the key to a continuing trespass.* *Id.*, citing *Sexton v. Mason* (12th Dist. No. CA2006-02-026), 2007-Ohio-38, at ¶ 17.

{¶59} Because this language focuses on the nature of the tortious conduct and the conduct at issue constituted a trespass, the court contemplated continuing action, not inaction. Proceeding with the foregoing foundation for its decision, *Sexton* held that a "discovery rule" applied with respect to damage to property from a trespass. *Id.*, citing *Harris v. Liston*, 86 Ohio St.3d 203, 714 N.E.2d 377 (1999). Thus, allegations in a complaint that allege continuing *damage* are insufficient. The complaint must "allege continuing activity" *by the defendant*. *Sexton*; *compare State ex rel. Doner v. Doty*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235.

{¶60} In this case, appellees alleged that toxic substances began entering their homes from the "Tank System" in 1982. The complaint stated that appellees noticed the gasoline smells at that time. The "trespass" onto their properties, therefore, had commenced. The gasoline originated from the gas station's pipes, over which the defendants had no control, and entered the pipes of appellees' homes, over which the defendants had no control. Once the defendants *declined* to address the alleged problem, appellees' cause of action against them had accrued. *See, e.g.*, *Luthy v. Dover,* 5th Dist.

No. 2011AP030011, 2011-Ohio-4604, ¶ 22 (respondeat superior claim against city barred by application of R.C. 2744.04 because homeowners' cause of action accrued when basement flooded; theory of "permanent trespass" rejected).

{¶61} Under these circumstances, if, as appellees argued, R.C. 2744.01(G)(2)(d) applied and created an exception to the defendants' immunity pursuant to R.C. 2744.02(B)(2), the defendants' liability for *negligence* thus occurred as early as 1982; appellees were put on notice at that time that none of the defendants was willing to "maintain" the State Road sewer lines to address the offensive smells. *Bauer v. Brunswick*, 9th Dist. No. 11CA0003-M, 2011-Ohio-4877, ¶ 14; *Luthy*. In other words, R.C. 2744.04 was triggered. The trespass of the gasoline, originating from the "Tank System," apparently continued.

{¶62} In an effort to overcome the application of R.C. 2744.04 to their claim against the political subdivisions, appellees therefore conflated the two separate torts of negligence and trespass. Assuming that the defendants had a duty to investigate the source of the smells, once they declined to do so, the tort they committed as appellees alleged in their complaints, i.e., negligence, was complete. *See Essman*, 4th Dist. No. 09CA3325, 2010-Ohio-4837. Continuing to advise appellees that the gasoline odors did not come through the sewer lines neither constituted a "trespass" as that word is defined in law, nor constituted an "activity" that protected appellees from application of the discovery rule. *State ex rel. Stamper v. Richmond Hts.*, 8th Dist. No. 94721, 2011-Ohio-4877.

{¶63} As of the first date that defendants declined to take action, their negligence accrued. Appellees were on notice to take the initiative themselves to discover the source of the trespass. *Bauer*, 9th Dist. No. 11CA0003-M, 2011-Ohio-4877; *see also Luthy*, 5th Dist. No. 2011AP030011, 2011-Ohio-4604, ¶ 22-24. Appellees could have hired, and, indeed, they would have been prudent to hire, a plumbing company, or contacted the Ohio Environmental Protection Agency, to ascertain whether their sewer lines contained gasoline.

{¶64} According to the complaints, therefore, the defendants' inaction, which dated more than two years before the explosion, may have been negligent, but it did not constitute a "continuing violation" for purposes of evading the application of R.C. 2744.04. *Stamper*, ¶ 27, citing *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588; *Luthy*.[4] Consequently, I believe the trial court erred in denying the defendants' Civ.R. 12(C) motion for judgment on the pleadings.[5]

---

[4]No better example of the "continuing violation" doctrine exists in this case, however, but the ongoing negligent failure of the owner-operator of the "Tank System" to inspect and replace the faulty gasoline tanks.

[5]In so stating, I must disagree with the reasoning set forth by the court in *Coleman v. Portage Cty. Engineer*, 191 Ohio App.3d 32, 2010-Ohio-6255, 944 N.E.2d 756, ¶ 63 (11th Dist). The *Coleman* court based its analysis on two other decisions that considered the "continuing violation doctrine," viz., *Kuhnle Bros., Inc. v. Geauga*, 103 F.3d 516 (6th Cir.1997) and *Painesville Mini Storage, Inc. v. Painesville*, 11th Dist. No. 2008-L-092, 2009-Ohio-3656.

However, the *Coleman* court misapplied those cases. In *Kuhnle Bros.*, the county had *passed legislation* that affected the plaintiffs on a continuing basis, while in *Painesville Mini Storage*, the court *rejected* the plaintiffs' claim of "continuing violation." The *Coleman* court also failed to consider when the plaintiffs first were aware of the underlying injury so as to apply R.C. 2744.04, or whether the underlying injury had been caused by the political subdivision's continuing actions rather than its inaction. Moreover, *Coleman* failed to analyze the situation presented in light of *Nicholl* and

{¶65} Based upon my analysis, I would sustain the defendants' first assignment of error, thus rendering their second assignment of error moot. App.R. 12(A)(1)(c). I would reverse the trial court order that denied the defendants' motion for judgment on the pleadings based upon R.C. 2744.04, and would enter judgment for the defendants on appellees' complaints.

_Sexton._