JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Appellant, the city of Cleveland ("the city"), appeals the trial court's denial of its motion for summary judgment. After a thorough review of the record, and for the reasons set forth below, we reverse and remand.
 {¶ 2} On January 11, 2007, CAC Building Properties, L.L.C. ("CAC"), filed suit against the city, Terrace Construction Company, Inc. ("Terrace"), and the Vallejo Company ("Vallejo") for their alleged involvement in damages arising from construction failures. On March 13, 2008, CAC filed its first amended complaint asserting inverse condemnation, nuisance, trespass, interference with business relationships, conversion, and negligence. On that same date, the city filed its answer asserting several affirmative defenses, including sovereign immunity.
 {¶ 3} On June 11, 2008, the city filed a motion for summary judgment arguing that it is immune from the claims, that it is not primarily or secondarily liable for the damages, and that CAC's inverse condemnation claim is not recognized under Ohio law. On July 15, 2008, Vallejo and Terrace filed motions for partial summary judgment.
 {¶ 4} On August 19, 2008, the trial court denied the city's motion for summary judgment, holding that "factual issues remain in dispute on the application of the governmental immunity statutes precluding an entry of summary judgment in favor of the city of Cleveland." The trial court also *Page 5 
granted summary judgment in favor of Terrace and Vallejo. On August 22, 2008, the city filed a timely notice of appeal.
 {¶ 5} The following facts gave rise to this appeal. In March 2006, the city began construction to prepare for the Euclid Corridor Transportation Project in Cleveland. The city's work included upgrades to utility vaults below Euclid Avenue. The nearby CAC Building had five utility vaults located under Euclid Avenue.
 {¶ 6} The city hired Terrace as the contractor for the work to be done in front of the CAC Building. Terrace hired subcontractors, including Vallejo, "to make vault improvements below the sidewalks." These improvements included "constructing underground concrete masonry units ("CMU"), walls to provide for an under-sidewalk access to CAC Building's electrical component service room and electric transformers."
 {¶ 7} On March 28 and 29, 2006, Terrace and Vallejo worked on constructing a concrete masonry wall under the CAC Building. On March 29, 2006, the wall collapsed, and the low strength mortar flooded the CAC Building, destroying electrical and mechanical equipment.
 {¶ 8} On September 27, 2006, Terrace left the excavations open, which exposed the electrical switchgear. As the result of a thunderstorm, water touched the CAC Building's electrical switchgear and caused an explosion and fire. *Page 6 
 Review and Analysis {¶ 9} The city brings this appeal asserting twelve assignments of error for our review.[1] The first five assignments of error relate to the issue of sovereign immunity; therefore, they shall be addressed together.
 {¶ 10} "I. The trial court erred when it denied the motion for summary judgment filed on behalf defendant-appellant, the city of Cleveland, with regard to the claim of trespass because the city is immune from this claim pursuant to O.R.C. § 2744.01 et seq."
 {¶ 11} "II. The trial court erred when it denied the motion for summary judgment filed on behalf of the city of Cleveland with regard to the claim of interference with business relationships because the city is immune from this claim pursuant to O.R.C. § 2744.01 et seq."
 {¶ 12} "III. The trial court erred when it denied the motion for summary judgment filed on behalf of the city of Cleveland with regard to the claim of *Page 7 
conversion because the city is immune from this claim pursuant to O.R.C. § 2744.01 et seq."
 {¶ 13} "IV. The trial court erred when it denied the motion for summary judgment filed on behalf of the city of Cleveland with regard to the claim of nuisance because the city is immune from this claim pursuant to O.R.C. § 2744.01 et seq."
 {¶ 14} "V. The trial court erred when it denied the motion for summary judgment filed on behalf of the city of Cleveland with regard to the claim of negligence because the city is immune from this claim pursuant to O.R.C. § 2744.01 et seq."
 {¶ 15} Within these assignments of error, the city argues that the trial court erred when it determined that it was not entitled to summary judgment based upon sovereign immunity. We find merit in this argument.
 Standard of Review: Summary Judgment. {¶ 16} "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that *Page 8 
conclusion is adverse to that party." Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.
 {¶ 17} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed.2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party.Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 18} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. (1991),59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record whichdemonstrate the absence of a genuine issue of fact or material elementof the nonmoving party's claim." Id. at 296. (Emphasis original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ. R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 19} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Commrs. (1993),87 Ohio App.3d 704, *Page 9 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ. R. 56(C). "The reviewing court evaluates the record *** in a light most favorable to the nonmoving party ***. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 Sovereign Immunity: R.C. 2744.02(A)(1). {¶ 20} R.C. 2744, the Political Subdivision Tort Liability Act, grants governmental immunity to political subdivisions such as the city. There is a three-tiered analysis to determine whether immunity applies. Under R.C. 2744.02(A) (1), the first tier requires that the defendant be a political subdivision. Elston v. Howland Local Schools,113 Ohio St.3d 314, 317, 2007-Ohio-2070, 865 N.E.2d 845. The second tier focuses on exceptions to immunity under R.C. 2744.02(B). Id. Finally, under the third tier, if an exception was found to exist, immunity may be restored if the political subdivision asserts a defense under R.C. 2744.03. Id. *Page 10 
 Political Subdivision: R.C. 2744.02(A)(1). {¶ 21} R.C. 2744.02(A)(1) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." (Emphasis added.)
 {¶ 22} R.C. 2744.01(F) states that a "`political subdivision' or `subdivision' means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."
 {¶ 23} It is undisputed between the parties that the city is a political subdivision. Ordinarily, the city is not liable for damages resulting from the acts of its employees in connection with a governmental or proprietary function; therefore, unless an exception applies, the city is immune.
 Exceptions to Immunity: R.C. 2744.02(B). {¶ 24} "Five exceptions to the general rule of immunity are found in R.C. 2744.02(B) which, again, expressly applies the immunity exceptions to conduct in connection with either governmental or proprietary functions. Under R.C. 2744.02(B)(2), "political subdivisions areliable for injury, death, or loss to person or property caused by thenegligent performance of acts by their employees with respect toproprietary functions of the political subdivisions." (Emphases added.) *Page 11 
 {¶ 25} Under R.C. 2744.01(G)(1), "`[p]roprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section, or that
 {¶ 26} is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section and *** is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." (Emphasis added.)
 {¶ 27} Under R.C. 2744.01(G)(2)(c), "[a] `proprietary function' includes *** the establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system." Accordingly, the city would be liable if the work being performed in the electrical vault in front the CAC Building involved the maintenance of a utility (proprietary function).
 {¶ 28} The city argues that the R.C. 2744.02(B)(2) exception does not apply because the work it was performing was a governmental function under R.C. 2744.01(C)(2). According to the city, the work it was doing was a public improvement project (a governmental function under R.C. 2744.01(C)(2)(l)); a sidewalk and/or road repair (a governmental function under *Page 12 
R.C. 2744.01(C)(2)(e)); or an urban renewal project (a governmental function under R.C. 2744.01(C)(2)(q)).
 {¶ 29} CAC argues that the city was engaged in the maintenance of a utility (a proprietary function under R.C. 2744.01(G)(2)), or, "at the very least, the city's argument that it was engaged in the governmental function of repairing a sidewalk and/or a public improvement is a disputed material fact that precludes summary judgment."
 {¶ 30} The city relies on Music Centers, Inc. v. Cuyahoga Falls, Ninth Dist. No. 21802, 2004-Ohio-3703, in support of its argument that it was engaged in a governmental function. In Music Centers, the plaintiff argued that Cuyahoga Falls was engaged in a propriety function when an underground utility vault collapsed during a construction project. Cuyahoga Falls argued that it was filling the vault as part of a sidewalk repair on top of the vault, which made it a governmental function. The Music Centers court held that "the city has shown that, when it filled the fault, it acted with a purpose to repair the sidewalk. *** The city's purpose to repair the sidewalk was wholly unrelated to the establishment, maintenance, or operation of its electrical utility. That a vault which may or may not have belonged to the city's electrical department was necessarily involved in this undertaking does not transform the sidewalk repair project into a utility venture." *Page 13 
 {¶ 31} We find that Music Centers is directly on point. The city has shown that the problem with the utility occurred during a public improvement project and/or a road or sidewalk repair, both of which are governmental functions. In fact, CAC managing member, Robert Munson, testified via deposition that "the Euclid Corridor project and the related vault work under and attached to [the building] was part of a project to maintain, repair, or construct roads, streets, or sidewalks." Mr. Munson also testified that he agreed the work "involved construction of a public improvement." Further, another CAC representative, Thomas Munson, testified that he believed that the city's goal was to "construct a public improvement."
 {¶ 32} Finally, in its first amended complaint, CAC stated "the city began construction and improvements to prepare for a public transportation project known as the `Euclid Corridor Project.' *** The city hired Terrace as a Prime Contractor for a portion of this work in front of the CAC Building. *** Among other things, Terrace began certain `vault improvements' below the sidewalks in front of the CAC Building."
 {¶ 33} The fact that a utility may have been involved in this project does not transform the public improvement project into a utility venture. As discussed above, in support of its motion for summary judgment, the city provided evidence that the vault work was related to the Euclid Corridor Project. CAC has not presented any evidence to refute that contention. Because the *Page 14 
vault work was related to the Euclid Corridor Project, it must be considered a governmental function pursuant to Music Centers, supra.
 {¶ 34} Accordingly, the city is not liable under the R.C. 2744.02(B)(2) exception because the property loss was not caused by an employee performing a proprietary function. Rather, the employee was performing a governmental function, from which the city is immune.
 Defenses to Immunity: R.C. 2744.03. {¶ 35} R.C. 2744.03 lists several defenses or immunities to the exceptions in R.C. 2744.02(B). These defenses or immunities are made applicable to both the governmental and proprietary functions of a political subdivision. Id. If any of these defenses apply, immunity would be reinstated. Having found that the city is immune from liability because none of the exceptions under R.C. 2744.02(B) apply, we need not address the third tier of analysis.
 {¶ 36} Accordingly, the city's first five assignments of error are sustained.
 {¶ 37} As discussed above, the city's remaining assignments of error are not properly before us; therefore we do not address them.
 {¶ 38} Judgment reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants recover of said appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal. *Page 15 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, P.J., and MELODY J. STEWART, J., CONCUR.
 APPENDIX
Appellant's remaining assignments of error:
VI. The trial court erred when it denied the motion for summary judgment filed on behalf of the city of Cleveland, because the city is not primarily or secondarily liable for the claim of trespass presented by plaintiff-appellee, CAC Building Properties, LLC.
VII. The trial court erred when it denied the motion for summary judgment filed on behalf of the city of Cleveland, because the city is not primarily or secondarily liable for the claim of interference with business relationships presented by plaintiff-appellee, CAC Building Properties, LLC.
VIII. The trial court erred when it denied the motion for summary judgment filed on behalf of the defendant-appellant, City of Cleveland, because the city is not primarily or secondarily liable for the claim of conversion presented by plaintiff-appellee, CAC Building Properties, LLC.
IX. The trial court erred when it denied the motion for summary judgment filed on behalf of defendant-appellant, the city of Cleveland, because the city is not primarily or secondarily liable for the claim of nuisance presented by plaintiff-appellee, CAC Building Properties, LLC.
X. The trial court erred when it denied the motion for summary judgment filed on behalf of defendant-appellant, the city of Cleveland, because the city is *Page 16 
not primarily or secondarily liable for the claim of negligence presented by plaintiff-appellee, CAC Building Properties, LLC.
XI. The trial court erred when it denied the motion for summary judgment filed on behalf of defendant-appellant, the city of Cleveland, because the city is not primarily or secondarily liable for the claim for punitive damages presented by plaintiff-appellee, CAC Building Properties, LLC.
XII. The trial court erred when it denied the motion for summary judgment filed on behalf of defendant-appellant, the city of Cleveland, where the motion established the claim for inverse condemnation is not a direct action recognized by Ohio courts, and was not properly before the trial court.
[1] Assignments of Error One through Five address the trial court's denial of summary judgement based on sovereign immunity. Ordinarily, a denial of summary judgment is not a final appealable order; however, under R.C. 2744.02(C), "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." Although we have jurisdiction to address the first five assignments of error, we do not have jurisdiction to address assignments of error Six through Twelve because they pertain to denials of summary judgment on bases other than sovereign immunity. Thus, we address only the first five assignments of error. Appellant's remaining assignments of error are contained in the Appendix to this Opinion. *Page 1