[Cite as *Jones v. John R. Jurgensen Co.*, 2015-Ohio-480.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

|  |  |  |
|---|---|---|
| GEORGE JONES, et al., | : | |
| Plaintiffs-Appellants, | : | CASE NO. CA2014-03-005 |
| | : | O P I N I O N<br>2/9/2015 |
| - vs - | : | |
| | : | |
| JOHN R. JURGENSEN COMPANY, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVH 2012 0415

Ronald J. Kozar, Kettering Tower, 40 North Main Street, Suite 2830, Dayton, Ohio 45423, for plaintiffs-appellants

Surdyk, Dowd & Turner Co., LPA, Edward J. Dowd, One Prestige Plaza, Suite 700, Dayton, Ohio 45342, for defendant-appellee, City of Wilmington, Ohio


**M. POWELL, J.**

{¶ 1}   Plaintiffs-appellants, George and Karen Jones, appeal a decision of the Clinton County Court of Common Pleas which granted summary judgment to defendant-appellee, the city of Wilmington, in a negligence case on the ground the city was immune from liability under R.C. Chapter 2744.

{¶ 2}   Appellants have lived in their home on McDermott Avenue in Wilmington, Ohio

since 1989. The house is located north of and downhill from West Locust Street. Appellants' backyard faces West Locust Street and slopes downward, away from their home, into a swale. The lowest point of the swale is located behind a house two doors west of appellants' home. At this low point is a storm drain controlled by the city as part of its operation of its storm sewer system.

{¶ 3}   On June 27, 2010, and through the night into the morning of June 28, 2010, the city experienced unusually heavy rain. The rainfall caused water to accumulate and pond in appellants' backyard, ultimately flooding their basement and garage and causing damage to the garage door, basement, and personal possessions. Karen Jones, who was home at the time of the flooding, testified that the water in their basement was about three feet high. When she subsequently looked outside through a window facing West Locust Street, she noticed the water ponding in her backyard. It was "like a lake of water," going from the back of their house all the way down to the storm drain. Jones testified that while she has witnessed similar heavy rainfall in Wilmington before and after the flooding, this was the first and only flooding they ever experienced in their home.

{¶ 4}   For a period of time prior to the flooding, the John R. Jurgensen Company was engaged in a city street and sidewalk improvement project on West Locust Street as a contractor for the Ohio Department of Transportation (ODOT). The project involved the removal of the old curb on the north side of the street and its replacement with a sidewalk and new curb. Jones testified that at the time of the flooding, the curb and the drains alongside West Locust Street had been removed and had not yet been replaced; there were piles of mud, broken-up concrete from the old curb, and debris along the street during the improvement project; and the new curb, drains, and sidewalks were installed a week or two after the flooding. West Locust Street is located a short distance uphill from the storm drain.

{¶ 5}   John Norton, appellants' expert, owns an engineering company. On June 30,

- 2 -

2011, a year after the flooding, appellants and Norton inspected the storm drain located two doors west of appellants' home and observed that the drain gate was blocked and covered with debris. Jones testified she did not know when or how the storm drain became covered with debris. However, she noticed the debris was similar to that which she had observed during the improvement project.

{¶ 6} On June 26, 2012, appellants filed a complaint against the city alleging negligence, trespass, and nuisance.[1] Appellants alleged that during the heavy rainfall on June 27-28, 2010, the storm drain became clogged or obstructed with worksite debris that had washed away from the construction site on West Locust Street, which in turn caused the swale to fill up like a bathtub and flood their basement and garage. Appellants alleged that the city committed negligence "by suffering the West Locust Street work to be performed without safeguards against foreseeable drainage of stormwater into the adjacent neighborhood, and by neglecting and failing to maintain the storm drain at issue and to protect it against the risk of obstruction by worksite debris."

{¶ 7} The city moved for summary judgment on the ground it was immune from liability under R.C. Chapter 2744. Specifically, the city argued that while appellants' negligence claim was ostensibly alleging negligent maintenance, when stripped to its core the claim was actually alleging negligent planning and design, a governmental function for which the city was entitled to immunity. The city further argued that even if it was not entitled to immunity, appellants' claim failed as there was no evidence the city had notice, constructive or actual, of any defect in the storm drain. The city did not submit any evidence with its motion for summary judgment but referred to the depositions of Jones and Norton. Both

---

1. Appellants also filed a complaint against Jurgensen and ODOT for negligence, trespass, and nuisance. However, in August 2012, appellants voluntarily dismissed their complaint against ODOT without prejudice. In July 2013, Jurgensen moved for summary judgment. The trial court denied the motion in November 2013. Subsequently, appellants and Jurgensen settled the case and appellants voluntarily dismissed their complaint against Jurgensen, without prejudice, in March 2014.

depositions were later filed with the trial court.

{¶ 8} Appellants filed a memorandum in opposition to the city's motion for summary judgment. Attached to the memorandum were appellants' respective affidavits and the city's responses to interrogatories. Appellants argued that their negligence claim in fact alleged three separate acts of misfeasance by the city, including "neglecting and failing to maintain the storm drain at issue," a proprietary function for which the city was not entitled to immunity. With regard to notice, appellants argued that under applicable case law, the city was "chargeable with knowledge of what a reasonable inspection would have revealed."

{¶ 9} On November 7, 2013, the trial court granted summary judgment to the city. The trial court first found that whether appellants' negligence claim challenged (1) "the street and sidewalk repair project itself," (2) "a combination of the street and sidewalk project and negligently maintained sewers or defectively designed sewers," or (3) "poorly designed sewers or a failure to upgrade the sewers," those were governmental functions for which the city was entitled to immunity. The trial court further found that

> Even if this court were to find that the proprietary function of sewer maintenance was not connected to or combined with any other governmental function so as to come under the umbrella of Chapter 2744 immunity, the City is still entitled to summary judgment as to plaintiffs' negligence claims [as] the City and plaintiffs have offered uncontroverted Civ.R. 56(C) evidence that * * * the City was unaware of any maintenance issues in regards to the sewer and storm drain at issue.

Finally, the trial court also found the city was immune from liability under R.C. Chapter 2744 with regard to the nuisance and trespass claims.

{¶ 10} Appellants appeal, raising one assignment of error:

{¶ 11} THE TRIAL COURT'S ENTRY OF SUMMARY JUDGMENT IN FAVOR OF THE CITY OF WILMINGTON WAS ERROR.

{¶ 12} Appellants argue the trial court erred in granting summary judgment to the city

on the ground the city was immune from liability under R.C. Chapter 2744. Specifically, appellants first argue the trial court erred in finding the city was immune because the damage occurred during a road project, a governmental function. Appellants also argue there is a genuine issue of material fact as to whether the city was negligent in maintaining the storm drain.

{¶ 13} Summary judgment is proper when the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that (1) there is no genuine issue of any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. *Id.*

{¶ 14} In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple*, 12th Dist. Clermont No. CA2005-08-075, 2006-Ohio-3536, ¶ 18. In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10. An appellate court reviews a trial court's decision to grant or deny summary judgment de novo, without any deference to the trial court's judgment. *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.).

{¶ 15} R.C. Chapter 2744 sets forth a three-tier analysis in determining whether a political subdivision is immune from liability. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶ 7. First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from liability for "injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Id.* However, that immunity is not absolute, and is subject to the five exceptions to immunity listed in R.C. 2744.02(B). *Id.*, *Wamsley v. West Jefferson*, 139 Ohio App.3d 170, 173 (12th Dist.2000).

{¶ 16} The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply. *Colbert* at ¶ 8. In the case at bar, the relevant exception to immunity is set forth in R.C. 2744.02(B)(2), which states:

> Except as otherwise provided in [R.C.] 3314.07 and 3746.24, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

In 1997, the Ohio Supreme Court extended the reach of this statutory provision to allow liability for "injury, death, or loss to persons or property caused by an act or omission of the political subdivision or any of its employees in connection with the performance of a proprietary function." *Hill v. Urbana*, 79 Ohio St.3d 130, 134 (1997); *Wamsley* at 173.

{¶ 17} Finally, if liability exists under R.C. 2744.02(B), immunity may be reinstated if the political subdivision can successfully assert one of the defenses to liability provided for in R.C. 2744.03(A). *Colbert*, 2003-Ohio-3319 at ¶ 9; *Estate of Enzweiler v. Clermont Cty. Bd. of Commrs.*, 12th Dist. Clermont Nos. CA2010-11-085 and CA2010-11-086, 2011-Ohio-896, ¶ 11. Whether a political subdivision is entitled to sovereign immunity under R.C. Chapter 2744 is a question of law. *Enzweiler* at ¶ 10.

{¶ 18} Appellants first argue the trial court erred in finding the city was immune

because the damage occurred during a road project, a governmental function.

{¶ 19} It is undisputed that the city is a political subdivision under R.C. 2744.01(F) and is generally immune from liability under the first tier of the analysis. *See* R.C. 2744.02(A)(1). As stated above, however, a political subdivision is liable under R.C. 2744.02(B)(2) for "injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.01(G)(2)(d) clearly provides that "the maintenance, destruction, operation, and upkeep of a sewer system" is a proprietary function. In its entry granting summary judgment to the city, the trial court acknowledged R.C. 2744.01(G)(2)(d) and found that "[t]herefore, a city may not enjoy immunity from liability and damages may arise if based solely on sewer maintenance issues."

{¶ 20} Nonetheless, the trial court found that the city was immune from liability on the ground that because appellants' negligence claim alleged the flooding was caused by a combination of debris from the sidewalk improvement project on West Locust Street and an improper sewer maintenance, and because the maintenance and repair of streets and sidewalks is a governmental function under R.C. 2744.01(C)(2)(e) for which a city is immune from liability, that immunity extended to the maintenance of the storm drain. Specifically, the trial court found that:

> Political subdivision activity that starts out as a governmental function before it impinges on a proprietary function has been found to be altogether a governmental function allowing the political subdivision to maintain its immunity.

The trial court relied on a decision of the Eighth Appellate District in support of its holding. *See CAC Bldg. Properties v. Cleveland*, 8th Dist. Cuyahoga No. 91991, 2009-Ohio-1786.

{¶ 21} We find the trial court erred in applying the governmental function immunity to appellants' claim of negligent maintenance simply because the storm drain was allegedly

obstructed by debris from the sidewalk improvement project, a governmental function. We also find that *CAC* is factually distinguishable and therefore, its holding is inapplicable here.

{¶ 22} At the outset, we note that appellants' complaint alleged the city was negligent in three separate aspects: (1) failure to provide safeguards against foreseeable drainage of storm water into the adjacent neighborhood, (2) failure to maintain the storm drain at issue, and (3) failure to protect the drain against the risk of obstruction by worksite debris. In their memorandum opposing the city's motion for summary judgment, appellants conceded that if the first and third acts of misfeasance required the city to make special expenditures of funds or special purchases of equipment to deal with the water-control issues raised by the roadwork, such acts of misfeasance might be subject to governmental immunity. Appellants argued, however, that the second act of misfeasance "suffer[ed] no such infirmity." Thereafter, appellants focused their argument solely on their claim the city was negligent for failing to maintain the storm drain. Likewise, we will only address that claim.

{¶ 23} The *CAC* decision relied on by the trial court involved a transportation corridor construction project in Cleveland which included upgrades to utility vaults below Euclid Avenue. The CAC Building had five utility vaults located under Euclid Avenue. On March 28 and 29, 2006, the contractor hired by Cleveland worked on constructing a concrete masonry wall under the CAC Building. On March 29, 2006, the wall collapsed, and the low strength mortar flooded the CAC Building, destroying electrical and mechanical equipment. In September 2006, the contractor left the excavations open, which exposed the electrical switchgear. As a result of a thunderstorm, water touched the CAC Building's electrical switchgear and caused an explosion and fire. CAC filed a complaint against Cleveland for negligence. Cleveland moved for summary judgment on the ground it was immune from liability. The trial court denied the motion.

{¶ 24} On appeal, Cleveland argued it was immune from liability because the work it

was performing was a governmental function, either as a public improvement project, a sidewalk and/or road repair, or an urban renewal project, all three of which are governmental functions under R.C. 2744.01(C)(2). By contrast, CAC argued Cleveland was engaged in the maintenance of a utility, a proprietary function under R.C. 2744.01(G). The Eighth Appellate District found that Cleveland was immune from liability as follows:

> The city has shown that the problem with the utility occurred during a public improvement project and/or a road or sidewalk repair, both of which are governmental functions. In fact, CAC managing member, Robert Munson, testified via deposition that "the Euclid Corridor project and the related vault work under and attached to [the building] was part of a project to maintain, repair, or construct roads, streets, or sidewalks." * * *
>
> * * *
>
> The fact that a utility may have been involved in this project does not transform the public improvement project into a utility venture. As discussed above, in support of its motion for summary judgment, the city provided evidence that the vault work was related to the Euclid Corridor Project. CAC has not presented any evidence to refute that contention. Because the vault work was related to the Euclid Corridor Project, it must be considered a governmental function[.]
>
> Accordingly, the city is not liable under the R.C. 2744.02(B)(2) exception because the property loss was not caused by an employee performing a proprietary function. Rather, the employee was performing a governmental function, from which the city is immune.

*CAC*, 2009-Ohio-1786 at ¶ 31, 33-34.

{¶ 25} In finding that Cleveland was immune from liability as a result of a governmental function, it was significant to the appellate court that the utility vault work was directly related to the construction project, and that the Euclid Corridor project and the related vault work were both components of an overall project to repair and construct streets and sidewalks. Indeed, the Euclid Corridor project specifically included upgrades to utility vaults located under Euclid Avenue, including the CAC Building vaults, and the damage was

caused as a direct result of the vaults being a part of the project. Such was not the case here.

{¶ 26} The West Locust Street sidewalk improvement project solely involved West Locust Street and did not include the storm drain at issue. Because the storm drain was not related to or a component of the West Locust Street sidewalk project, its unrelated general maintenance or lack thereof cannot be considered a governmental function, even if the storm drain allegedly became obstructed by debris from the sidewalk improvement project. The source of the debris which obstructed the drain is irrelevant. In other words, the city's alleged failure to generally maintain the storm drain does not become a governmental function simply because another political subdivision was involved in an unrelated sidewalk improvement project nearby, a governmental function.

{¶ 27} We also note that Ohio courts have long recognized that a city can be liable for the negligent maintenance of its sewers. *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, ¶ 18. *See Portsmouth v. Mitchell Mfg. Co.*, 113 Ohio St. 250 (1925) (when a municipal corporation assumes the control and management of a sewer system or drain, it is bound to use reasonable diligence and care to keep such sewer or drain in good repair, and is liable in damages to any property owner injured by its negligence in this respect); *Doud v. Cincinnati*, 152 Ohio St. 132 (1949) (when a municipality constructs or maintains sewers, it becomes its duty to keep them in repair and free from conditions which will cause damage to private property; and in the performance of such duty the municipality is in the exercise of a proprietary function and not a governmental function within the rule of municipal immunity from liability). Here, the city had a duty to inspect and maintain its sewer system and storm drains. The fact that the obstruction to the storm drain at issue may have originated from an immune sidewalk improvement project does not relieve the city of that duty.

{¶ 28} In light of the foregoing, we find that the trial court erred in applying *CAC* to appellants' negligent maintenance claim, in treating appellants' negligent maintenance claim as a combined claim regarding the sidewalk improvement project and negligently maintained sewers, and in holding that the city was immune from liability because the unrelated sidewalk improvement project constituted a governmental function. We note that the city has not asserted one of the defenses to liability provided for in R.C. 2744.03(A). While the city argued a lack of notice below and on appeal, "[t]his is not a defense dealing with immunity [as] it does not fit under any of the defenses listed under R.C. 2744.03." *Reinhold v. Univ. Hts.*, 8th Dist. Cuyahoga No. 100270, 2014-Ohio-1837, ¶ 16.

{¶ 29} Appellants also argue the trial court erred in granting summary judgment to the city because there is a genuine issue of material fact as to whether the city was negligent in maintaining the storm drain. The city argues, and the trial court found, that the city is entitled to summary judgment because it had no actual or constructive notice of a defect in the storm drain.

{¶ 30} In order to establish negligence, one must show the existence of a duty, a breach of that duty, and that the breach was the proximate cause of an injury. *Nelson*, 2013-Ohio-493 at ¶ 22. As stated above, the Ohio Supreme Court has held that when a municipality assumes the control and management of a sewer system, it becomes its duty to keep the sewer in good repair and free from conditions which will cause damage to private property. *Mitchell Mfg. Co.*, 113 Ohio St. at 255; *Doud*, 152 Ohio St. at 137. In *Doud*, the supreme court further held that:

> It is true that a municipality is not liable for damages growing out of a dangerous condition which suddenly arises in connection with the use or operation of its streets, sewers or other structures, until it has actual or constructive notice of such condition. But, where there rests upon the municipality, as there did in this case, a duty of inspection of the sewer as an instrumentality under its supervision and control, the municipality

becomes chargeable with notice of what reasonable inspection would disclose.

\* \* \*

The duty of a municipality to keep its sewers in repair involves the exercise of a reasonable degree of watchfulness in ascertaining their condition, from time to time, and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to be anticipated and could be guarded against by occasional examination and cleansing, the omission to make such examinations and to keep the sewers clear is a neglect of duty which renders the municipality liable.

*Doud* at 137-138.

{¶ 31} This court relied on *Doud* in a case similar to the case at bar. *See Kiep v. Hamilton*, 12th Dist. Butler No. CA96-08-158, 1997 WL 264236 (May 19, 1997). In *Kiep*, homeowners filed a complaint against the city of Hamilton after their backyard and garage were flooded. The flood was caused by blockage of the opening to an underground culvert located in the rear of the homeowners' yard by an accumulation of logs, branches, tree limbs, leaves, and other natural debris after a storm. Prior to the flood, there had been no flooding problems associated with the ditch. The trial court granted summary judgment to Hamilton on the ground it was immune from liability. This court reversed the grant of summary judgment on the ground, inter alia, that:

Evidence that there was damage to the sewer, that the damage may have been the result of Hamilton's failure to inspect and maintain the sewer, and that excessive flooding occurred is sufficient evidence to maintain a claim of negligence and defeat a motion for summary judgment. Ohio courts have held that if a city accepts the responsibility to maintain a sewer and is then negligent in its inspection and/or maintenance of the sewer, the city may be liable for damages proximately caused by its negligence.

Appellants presented evidence that the flooding occurred because the underground culvert opening was blocked and evidence that Hamilton had not inspected the ditch since 1990. Appellants also showed that major tree trimming work by

Asplundh took place prior to the flood. Appellants also presented evidence that cut logs similar to the ones found blocking the ditch opening were found upstream and stacked close to the stream bed. Construing the evidence in a light most favorable to appellants, a reasonable person could find that because of Hamilton's employees' negligent failure to inspect the ditch, or because of the negligence of the employees in maintaining the ditch, Hamilton proximately caused the flooding that caused damage to appellants. The fact that it has not been conclusively determined who caused the underground culvert opening to be blocked shows that there "is a genuine issue of material fact, as the city could be found negligent based on inferences viewed most favorably to appellants."

(Internal citations omitted.) *Kiep*, 1997 WL 264236 at *6. *But see Kendle v. Summit Cty.*, 9th Dist. Summit No. 15268, 1992 WL 80074 (Apr. 15, 1992) (finding that the county was not negligent in a case involving raw sewage in homeowner's basement more than two years after the county's last inspection and cleaning of the sewer line, because there was no showing the sewer line was defective or that the county had any prior notice the sewer was clogged or about to become clogged, and there was no evidence more recent inspections would have revealed the blockage that occurred in that case).

{¶ 32} Here, in granting summary judgment to the city, the trial court found that:

The City offered evidence that it was not on any notice of any maintenance issues. The City stated in [its] answer to interrogatories that "no complaints concerning the storm drain in question" were received. Plaintiffs offered no counter evidence to establish that the City was on notice of a defect in the sewer system. In fact, plaintiffs admit they had never contacted Defendant City in regards to issues with the storm drain at issue before the flooding. The Ohio courts have consistently held that without notice of a sewer problem, a municipality will not be held negligent.

The uncontroverted Civ.R. 56(C) evidence before the Court regarding no prior notice of a sewer maintenance problem, entitles the City to have Plaintiffs' claim based upon negligent sewer maintenance dismissed. (Internal citations omitted.)

{¶ 33} As stated earlier, the city did not submit *any* evidence with its motion for summary judgment but simply referred to the depositions of Jones and Norton in its motion.

Jones testified that (1) the June 27-28, 2010 flooding was the only flooding she and her husband experienced in their home; (2) she did not know when or how the storm drain became covered with debris; (3) she did not know whether the storm drain was obstructed before the flooding; (4) before June 2010, they never had any problems or concerns with the storm drain being "plugged or backing up;" and (5) she never saw workers working on the storm drain before June 27, 2010. Norton testified he did not know whether the storm drain was already blocked before June 26, 2010, or what its condition was immediately before the heavy rainfall.

{¶ 34} The city's answers to interrogatories were submitted by appellants with their memorandum in opposition to the city's motion for summary judgment. Asked about "all repair work, maintenance work, cleaning work, clearing work, or other work performed since January 1, 2000 upon the storm drain or storm sewer a few steps behind the backyard of [appellants'] residence," the city answered as follows:

> *The City is unaware of any repair or maintenance work to the storm sewer or storm drain in question. Relative to any cleaning or clearing work, the City does not maintain any records concerning any cleaning efforts.* The City has numerous storm drains located within its jurisdiction and the Sewer Department personnel are instructed to remove any debris that may be obstructing any storm drains if it is brought to their attention either by personal observation or citizen complaint. The City does maintain a complaint tracking system, which was initiated in 2008. There were no complaints concerning the storm drain in question.
>
> We are unable to provide the name of any particular employee that may have performed any cleaning tasks. Any one of the Sewer Department crew may have removed debris over the years.
>
> *To the best of our knowledge, no repairs or maintenance work was ever performed on the storm drain in question.* To the extent any debris removal from the drain relative to any cleaning comment would be limited to the removal [of] any debris that may be obstructing the flow into the storm drain. *No records are maintained for the removal of any obstructions.*

- 14 -

(Emphasis added.)

{¶ 35} Upon carefully reviewing the evidence submitted by the parties, which must be construed in favor of appellants, the nonmoving party, we find that the evidence is not so one-sided that the city is entitled to judgment as a matter of law. To the contrary, in light of the city's answers to interrogatories, we find there is a genuine issue of material fact as to whether the city was negligent in maintaining the storm drain. We also find there is a genuine issue of material fact as to whether the storm drain was obstructed at the time of the heavy rainfall on June 27-28, 2010. Jones testified that the only time they experienced flooding in their home was on June 27-28, 2010, at a time when Jurgensen was involved in a sidewalk improvement project on West Locust Street, uphill and a short distance from the storm drain at issue. She further testified that prior to June 27-28, 2010, they never had a problem with the storm drain and she never saw workers working on the storm drain. The city acknowledged no maintenance work has ever been performed on the storm drain, and while it keeps a citizen complaint tracking system, it neither has nor keeps a record regarding storm drain obstruction removal, cleaning work, or clearing work.

{¶ 36} In the case at bar, a reasonable person could find that because of the city's negligent failure to inspect or maintain the storm drain, the city proximately caused the flooding that caused damage to appellants. *See Kiep*, 1997 WL 264236. The operation of a sewer system includes a duty to inspect for defects or potential problems. *See Doud*, 152 Ohio St. 132. Therefore, the city is chargeable with knowledge of what a reasonable inspection would have revealed. *See Kendle* at *2, citing Restatement of the Law 2d, Torts, Section 289, Comment j (1965). The fact it has not been conclusively determined what caused the storm drain to become obstructed or when it became obstructed shows there is a genuine issue of material fact, as the city could be found negligent based on inferences

viewed most favorably to appellants. *See Billmaier v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2008-02223-AD, 2009-Ohio-3019.

{¶ 37} We therefore find the trial court erred in granting summary judgment to the city regarding appellants' claim the city was negligent in failing to maintain the storm drain.

{¶ 38} Appellants' assignment of error is well-taken and sustained.

{¶ 39} Judgment reversed and remanded to the trial court for further proceedings.

RINGLAND, P.J., and S. POWELL, J., concur.